STATE of Delaware,
Plaintiff-below, Appellant,

v.

Gene W. BAILEY,
Defendant-Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 20, 1987.
Decided: April 6, 1987.

Gary A. Myers (argued), Deputy Atty. Gen., Georgetown, for appellant.

Thomas C. Jackson (argued), Dover, for appellee.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice.

The defendant, Gene Wayne Bailey, was tried before a jury in the Superior Court of Sussex County on charges of manslaughter and possession of a deadly weapon during the commission of a felony. Although he was acquitted of the manslaughter charge, Bailey was convicted by the jury of criminally negligent homicide and the weapon's charge. Following the jury's verdict, the trial judge granted the defendant's motion for a judgment of acquittal. The State now appeals that post trial verdict.

The defendant opposes the appeal on jurisdictional grounds and upon the merits. On appeal, the State raises two arguments. First, the State argues that it may bring an appeal under 10 *Del.C.* § 9902(a) because a review of the Superior Court's post-verdict order would not violate the Double Jeopardy Clauses of the State or Federal Constitutions. Second, the State argues that the Superior Court mistakenly imposed its own view of the evidence and erroneously vacated the jury's verdict. We find, after reviewing the legislative history and the plain language of the statute, that the State has no right of appeal under § 9902(a) in this case.

We will succinctly summarize the facts presented at trial. In the Spring of 1984, Bailey was a lumberman working for the Dorchester Lumber Company. For nearly a year, he had worked along side of the victim, Michael Rizia. In early April, 1984, the two had a disagreement. Rizia complained that Bailey was not working enough hours each day and that Bailey should work overtime for no pay.

On Friday morning, April 6, 1984, Bailey called his employer, Bennett Dickinson. Bailey stated that although he was experiencing problems with his van, he would stop at the office to pick up his paycheck and then go to the work site at Hooper's Island, Maryland. Bailey came in and picked up his paycheck but never arrived at Hooper's Island. Dickinson unsuccessfully tried to reach Bailey by telephone on Satur-

day, April 7, 1984. The following Monday, April 9, 1984, Bailey again did not show up for work and once again Dickinson tried, without success, to reach Bailey at his home.

After work on Monday, Dickinson decided to go see Bailey. However, because he did not know where Bailey lived, Dickinson asked Rizia for directions. Rizia, confessing that "he kind of felt bad" about his disagreement with Bailey, said he also wanted to go "to get it straightened out." The two men then drove to Bailey's home near Dagsboro, Delaware. Bailey, who had gone to bed with his wife at 8:00 p.m., was awakened by a pounding on his door at approximately 9:00 p.m. He got up and went to the door, recognizing Rizia. When Bailey opened the door, Rizia asked: "What's wrong with you?" In response, Bailey told Rizia to get the "hell out of here" and closed the door.

Rizia, standing sideways in the entrance with the storm door open resting against his back, then began pounding on the front door and turning the knob. When Bailey told him that he was going to call the police, Rizia said "call the F___G law, I don't give a F__K. I'm going to do what I want."

Bailey went to the phone and found it inoperative despite the fact that it worked earlier that day.[1] Next, Bailey went to a china closet and got his pistol. With his wife screaming "no," Bailey pulled back the loading mechanism on the pistol and a shot was fired into the closed front door. The bullet went through the middle of the door. Outside, Rizia grabbed his arm, turned, and ran down the steps. Bailey opened the door and saw Rizia running away. Moving to the foot of the stoop, Bailey then fired three more shots. Rizia fell. After struggling to his feet, Rizia ran into an adjacent field, but collapsed to the ground fifty feet from the house. When the police arrived, they found Rizia dead.

At trial the prosecution, using the testimony of Dickinson, the medical examiner and Bailey's statement taken that night, recreated the events of the homicide for the jury. Bailey offered several defenses.[2] The jury found Bailey guilty of criminally negligent homicide and possession of a deadly weapon during the commission of a felony.

Bailey filed a post trial motion for judgments of acquittal pursuant to Superior Court Criminal Rule 29(c). In his motion, Bailey argued that the evidence was insufficient to support any hypothesis except that the fatal shot had been justifiably fired at the door. The trial judge granted Bailey's motion for judgment of acquittal. First, he found, as a matter of law, that the first shot fired through the door was justified. Second, the trial judge held that the evidence did not sufficiently negate the possibility that the fatal back wound was inflicted at the door. In conclusion, the trial judge overturned the verdict on both charges stating that the jury "should have had a reasonable doubt as to whether the defendant, when he killed the victim, was defending his home against a violent intrusion or, a moment later, following the intruder and firing at him in the excitement of the moment."

The threshhold question to be resolved in this appeal is the defendant's jurisdictional challenge. Section 9902(a) grants the State an absolute right to appeal from

> a final order of a lower court where the order constitutes a dismissal of an indictment or information or any count thereof, or the granting of any motion vacating any verdict or judgment of conviction where the order of the lower court is based upon the invalidity or construction of the statute upon which the indictment or information is founded or the lack of jurisdiction of the lower court over the person or subject matter. 10 *Del. C.* § 9902(a) (1974).

---

1. The telephone was inoperative because a wire was off at the outside connector box. This was verified by a telephone company employee who recalled the service call to defendant's house.

2. At the conclusion of the State's case, the defense unsuccessfully moved for judgments of acquittal.

The State contends that the legislature intended § 9902(a) to permit it to take an appeal from any order terminating a prosecution whenever appellate review would not offend the principles of Double Jeopardy or alternatively that the Superior Court's post trial judgment of acquittal was a "dismissal" of an indictment which is appealable under 10 *Del.C.* § 9902(a). In contrast, the defendant argues that the legislative purpose of § 9902(a) is much narrower. According to the defendant's interpretation, the legislature sought to allow appellate review only where the lower court's order vacating a conviction was based upon (1) the invalidity or construction of the statute upon which the indictment was founded; or (2) lack of jurisdiction over the person or subject matter. In order to fully address these opposing arguments, it is necessary to examine the history of 10 *Del.C.* §§ 9901, *et seq.*, concentrating especially on section 9902.

At common law, a State had no right of appeal in a criminal case, See *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892). When an appeal was allowed to the State by statute, the right was strictly limited to cases coming within the statutory terms. See 24 C.J.S. Criminal Law § 1659 and *State v. Dobies*, Del.Super, 290 A.2d 663 (1972). Statutes which permit appeals by the State in criminal matters are not uniform throughout the country. This became evident in the United States Supreme Court's decision in *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). In *Palko*, the Court upheld a Connecticut statute which allowed the prosecution to seek review of legal errors committed during trial even if the defendant had obtained an acquittal from the jury. *Id.* at 327–28, 58 S.Ct. at 153. The *Palko* Court took the view that appeals by the prosecution and subsequent retrials were only parts of one continuing jeopardy. *Id.* at 328–29, 58 S.Ct. at 153. The Connecticut statute, therefore, does permit appeals by the State as long as the principles of Double Jeopardy are not violated.

■ Despite the Supreme Court's holding in *Palko*, the Governor's Committee for the Revision of the Delaware Criminal Law rejected as too extreme the Connecticut statute allowing appeals after acquittal by the jury. The Delaware Committee concluded that the State's right of appeal following the vacating of a conviction should be *limited* to situations where the defendant was "saved" by an erroneous ruling of law. The Committee was able to do this because the rights afforded in the Federal Constitution provide minimum guarantees. If a State chooses to afford a defendant more rights than the minimum that are Constitutionally mandated, it is free to do so through statutes. Delaware has made such a choice. Having concluded that § 9902 is not broad enough to permit *any* appeal by the State that does not violate the principles of Double Jeopardy, we must focus upon the language of the statute itself.

The Delaware statute, originally passed in 1969, was based upon the then-existing federal act which permitted appeals in criminal cases. *State v. Cooley*, Del.Supr., 457 A.2d 352, 356 (1983); *State v. Fischer*, Del.Supr., 278 A.2d 324, 325 (1971). The United States Supreme Court discussed the reasons for enacting the federal law in *United States v. Mersky*, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960). The Court stated:

It therefore appears abundantly clear that the remedial purpose of the Act was to avert 'the danger of frequent conflicts, real or apparent, in the decisions of the ... courts, and the unfortunate results thereof'; and to eliminate 'the impossibility of the government's obtaining final and uniform rulings by recourse to a higher court.'

*Id.* at 436, 80 S.Ct. at 462–63.

This Court examined the construction of 10 *Del.C.* § 9902(a) for the first time in *State v. Fischer*, Del.Supr., 278 A.2d 324 (1971). In *Fischer*, this Court found an ambiguity in the statute's language in that it was not clear how the statute should be punctuated. *Id.* at 325. This Court inter-

preted the statute by inserting punctuation and arranging it as follows:

"(1) Appeal As Of Right. THE STATE shall have an absolute right to appeal to an appellate court a final order of a lower court where the order constitutes (a) a dismissal of an indictment or information or any count thereof; or (b) the granting of any motion vacating any verdict or judgment of conviction (1) where the order of the lower court is based upon the invalidity or construction of a statute upon which the indictment or information is founded, or (2) where the order is based on the lack of jurisdiction of the lower court over the person or subject matter."

*Id.* at 326.

The provisions of 10 *Del.C.* § 9902(a) provide for appeals by the State in three situations: (1) from the final order of a lower court where the order constitutes a dismissal of an indictment or information or any count thereof; (2) from the granting of any motion vacating any verdict or judgment of conviction where the order of the lower court is based upon the invalidity or construction of the statute upon which the indictment or information is founded; and (3) from an order of the lower court finding that there is a lack of jurisdiction over the subject matter or the person. The jurisdiction of the Superior Court is not an issue here. We will, therefore, only consider the interaction of the other two avenues of appeal for the State that appear in the statute.

In this case, the Superior Court vacated a jury judgment of conviction. The State has successfully employed § 9902(a) for appeals from the vacation of a verdict or judgment of conviction based upon the invalidity or construction of a statute underlining the charging instrument. See, e.g., *State v. Smallwood,* Del.Supr., 346 A.2d 164, 167 (1975) (trial judge's ruling vacating the verdict based upon "construction of a statute"); *See also State v. Rucker,* Del. Super., 297 A.2d 400 (1972) (trial judge held to have misinterpreted chemical test statute.) However, in this case, the State concedes that the verdict was not vacated

based upon the interpretation of the statute. Therefore, the State relies upon the "dismissal" language in § 9902(a) in support of its right to appeal this case.

The focus on a "dismissal" under § 9902(a) requires a two-pronged analysis. First, had jeopardy attached and second, what was the basis for the Court's decision? The "dismissal" portion of § 9902(a) has been successfully used in many cases to appeal orders dismissing indictments or informations *before* jeopardy has attached. See, e.g. *State v. Budd Metal Company, Incorporation,* Del.Supr., 447 A.2d 1186 (1982) (dismissal of indictment for unnecessary delay); *State v. Anderson,* Del.Supr., 349 A.2d 748 (1975) (dismissal of indictment for unnecessary delays, culminating in failure to timely prepare transcript of testimony); *State v. Hoffstein,* Del.Supr., 315 A.2d 594 (1974) (dismissal of indictment with prejudice based on unnecessary delay); *State v. Honie,* Del.Supr., 310 A.2d 872 (1973) (dismissal of several counts of indictment). All of these cases related to the dismissal of charges before the rendition of a verdict and before jeopardy had attached.

■ In this case, not only had jeopardy attached, but a judgment of acquittal had been entered that was not based upon the construction of the statute upon which the indictment was founded. The State argues, however, that it should be permitted to appeal under § 9902(a) because the court's post-trial judgment of acquittal was the functional equivalent of a "dismissal" of the indictment. Several cases have held that a dismissal of charges subsequent to the attachment of jeopardy is in effect an acquittal because jeopardy had attached, e.g., *State v. Dennis,* Del.Supr., 306 A.2d 729 (1973). However, no case has held that an acquittal following a conviction is equivalent to a dismissal. The statute itself does not provide for this converse analogy. If that argument was accepted by this Court, even a jury verdict of not guilty is the dismissal of an indictment which could be appealed by the State. Such an interpretation is contrary to that portion of § 9902 contrasting dismissals and "motions

vacating any verdict," which include post-trial judgments of acquittal.

The Delaware statutory framework provides that *post-trial* appeals by the State may only be brought with leave of this Court pursuant to 10 *Del.C.* § 9903 not § 9902, *unless* the Superior Court's decision involved the invalidity or construction of the statute upon which the indictment or information was based. The significant difference of an appeal under § 9902 and § 9903 from the defendant's perspective is discussed in *State v. Marchant*, Del.Super., 505 A.2d 1303 (1986). In this case, the trial judge premised his judgment of acquittal upon the sufficiency of the evidence. The trial judge did not base his verdict of acquittal upon the invalidity or construction of the criminal statute under which the defendant had been charged. Consequently, we find that the State has no right of appeal under § 9902. *State v. Fischer*, Del.Supr., 278 A.2d 324 (1971).

■ The appellate jurisdiction of the Court must be statutorily or constitutionally conferred. *McCoy v. State*, 59 Del. (9 Storey) 238, 217 A.2d 496, 497 (1966). Absent such authority, review will be denied despite the presence of an important question. *Shoemaker v. State*, Del.Supr., 375 A.2d 431, 436 (1977). The State's desire to obtain a decision by this Court on the correctness of the post-trial ruling could only have been implemented with leave of this Court and without prejudice to the defendant's acquittal, pursuant to 10 *Del.C.* § 9903. Accordingly, this appeal under 10 *Del.C.* § 9902 must be

DISMISSED.