Jay N. **KARPA;** Elizabeth J. Karpa, Petitioners–Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–1577.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1990.

Decided July 27, 1990.

John Adams Corry, Davis, Polk & Wardwell, New York City, argued (Philip C. Potter, Jr., Stephen D. Hibbard, Davis, Polk & Wardwell, New York City, Jay Fred Cohen, Baltimore, Md., on the brief), for petitioners-appellants.

Kenneth L. Greene, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Kevin M. Brown, Tax Div., U.S. Dept. of Justice, Washington, D.C., on the brief), for respondent-appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.

PHILLIPS, Circuit Judge:

Jay and Elizabeth Karpa appeal from the Tax Court's decision upholding the Commissioner's proposed imposition of a tax penalty under former I.R.C. § 6661(a). The Karpas argued that the § 6661(a) tax penalty for substantial understatement of tax liability, as applied retroactively to their 1984 return, was unconstitutional as violative of the ex post facto clause. Both parties moved for judgment on the pleadings, and the Tax Court granted the Commissioner's motion. We agree that former § 6661(a) does not violate the ex post facto clause and therefore affirm.

I

The Commissioner audited the Karpas' 1984 joint tax return and determined a deficiency of $10,933.07, an understatement of their tax liability of approximately 18%.[1] The Karpas paid this amount, plus applicable interest, in July 1986. The Commissioner issued the Karpas a statutory notice of deficiency and proposed a 25% penalty, pursuant to I.R.C. § 6661, for substantial understatement of tax liability for the year 1984. Recent amendments to the Internal Revenue Code (Code) had increased the penalty for substantial understatement of tax liability from 10% of the underpayment to 25% of the underpayment, to be applied to penalties assessed after the effective date of the amendments, October 21, 1986. The Commissioner therefore sought to assess a $2,733.27 penalty under § 6661(a),

25% of the $10,933.07 understatement. The Commissioner also asserted that the Karpas were liable for additions to tax pursuant to former I.R.C. § 6653(a)(1), (2)[2] for negligence.

The Karpas petitioned the Tax Court for redetermination of the deficiency. They challenged only the imposition of the 25% penalty under § 6661(a), arguing that retroactive application of the increase to their 1984 tax return violated the ex post facto clause. The Commissioner moved for judgment on the pleadings, and the Karpas filed a cross-motion for judgment on the pleadings.[3] The Tax Court followed the established rule that the ex post facto clause applies only to criminal statutes and rejected the Karpas' contention that § 6661 as amended was criminal in nature. Relying on *United States v. Halper*, — U.S. ——, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), for guidance, the court found that the penalty under § 6661(a) was not "overwhelmingly disproportionate" to the damages caused by the tax offender and thus the statutory penalty was a civil penalty.

This appeal followed and presents an issue of first impression. The Karpas continue to press their ex post facto argument and, for the first time, raise the contention that retroactive application of the increased penalty under § 6661(a) violates their rights to due process and equal protection of the laws. After reviewing the relevant statutory history of § 6661, we will address the constitutional challenges to the statute.

II

A

▪ Section 6661(a) of the Code, originally passed in 1982 and applicable to tax

---

1. The Commissioner apparently disallowed substantial deductions taken by the Karpas.

2. At the time, I.R.C. § 6653 provided, in relevant part:
   (a) Negligence.—
      (1) In general.—If any part of any underpayment ... is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of—
      (A) 5 percent of the underpayment, and

(B) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last date prescribed by law for payment of such underpayment....
I.R.C. § 6653(a)(1) (1987).

3. *See* Rule 120, Rules of Practice and Procedure of the United States Tax Court, 26 U.S.C. foll. § 7453.

**786**

returns due after December 31, 1982, penalizes the "substantial understatement of income tax."

> If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.

I.R.C. § 6661(a) (repealed 1989). As enacted in 1982, § 6661(a) provided for a 10% addition to tax liability. In 1986, Congress passed § 8002 of the Omnibus Budget Reconciliation Act of 1986 (OBRA 1986), increasing the additional assessment from 10% to 25%. OBRA 1986, Pub.L. 99–509, § 8002(a), 100 Stat. 1874, 1951 (1986). The amendment was to apply to "penalties assessed after the date of the enactment of this Act." *Id.* § 8002(b).[4]

The legislative history of § 6661 indicates that the principal objective of the section was to deter taxpayers from playing the "audit lottery," that is, taking undisclosed questionable reporting positions and gambling that they would not be audited. *See* S.Rep. No. 494 (Vol. 1), 97th Cong., 2d Sess., 272–73 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 1019–1020.[5] The Senate Report accompa-

nying OBRA 1986 indicates that a primary purpose of the act was to reduce the budget deficit. S.Rep. No. 348, 99th Cong., 2d Sess. 3–4, U.S.Code Cong. & Admin.News 1986, 3607. Section 8002, which amended I.R.C. § 6661(a) to increase the tax penalty for substantial understatement of income tax liability, was passed along with other revenue enhancing measures in title VIII, subtitle A, of OBRA 1986.

**B**

The Karpas challenge the amendment to § 6661(a) as an unconstitutional ex post facto law. Because the 25% penalty applied to penalties *assessed* after OBRA 1986 was enacted, the increased penalty can apply, as in this case, retroactively to returns due after December 31, 1982, when § 6661 first became effective, but before OBRA 1986 was passed by Congress. This retroactive application of an increase in punishment they claim violates the ex post facto clause. *See Collins v. Youngblood,* — U.S. —, — – —, 110 S.Ct. 2715, 2717–21, 111 L.Ed.2d 30 (1990); *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390–91, 1 L.Ed. 648 (1798) (opinion of Chase, J.).

The prohibition against ex post facto laws applies only to penal legislation

---

**4.** Congress actually passed two acts in 1986 that would have amended § 6661(a). In addition to § 8002 of OBRA 1986, the Tax Reform Act of 1986 (TRA 1986) would have increased the additional assessment from 10% to 20%, but was to apply only prospectively to returns due after December 31, 1986. TRA 1986, Pub.L. 99–514, § 1504, 100 Stat. 2085, 2743 (1986). OBRA 1986 § 8002(c) "repealed" TRA 1986 § 1504, and the Technical and Miscellaneous Revenue Act of 1988, Pub.L. 100–647, § 1015(c), 102 Stat. 3342, 3569 (1988), made clear that the 25% penalty applied under I.R.C. § 6661(a). *See also Pallottini v. Commissioner,* 90 T.C. 498 (1988). The Karpas do not dispute that § 6661(a), as amended, imposed a 25% penalty.

Section 6661 was repealed by the Omnibus Budget Reconciliation Act of 1989 (OBRA 1989). OBRA 1989, Pub.L. No. 101–239, § 7721(c)(2), 103 Stat. 2106, 2399. The "substantial understatement" penalty was consolidated along with other "accuracy-related penalties" in I.R.C. § 6662. *See id.* § 7721(a). The new law applies to returns due after December 31, 1989. *Id.* § 7721(d).

**5.** The Senate Report indicates:

The committee believes that an increasing part of the compliance gap is attributable to the "audit lottery." The audit lottery is played by taxpayers who take questionable (although non-negligent) positions on their returns in the hope that they will not be audited. If a taxpayer is audited and the questionable position is challenged, then he or she pays the additional tax owing plus interest. Importantly, however, taxpayers are not exposed to any downside risk in taking highly questionable positions on their tax returns since even resolution of the issue against the taxpayer will require only payment of the tax that should have been paid in the first instance with interest to reflect the cost of the "borrowing." ... Thus, in the event that the questionable position is not detected, the taxpayer will have achieved an absolute reduction in tax without cost or risk. The committee believes, therefore, that taxpayers should be subject to a penalty designed to deter the use of undisclosed questionable reporting positions.
S.Rep. No. 494 (Vol. 1), 97th Cong., 2d Sess., 272–73 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 1019–1020.

that imposes or increases *criminal* punishment for conduct predating its enactment. *See, e.g., Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952). The ex post facto clause is not applicable to legislation imposing civil disabilities. *See, e.g., Johannessen v. United States,* 225 U.S. 227, 242, 32 S.Ct. 613, 617, 56 L.Ed. 1066 (1912). Applying these general principles, the Supreme Court rejected an ex post facto challenge to Connecticut's retrospective application of a tax penalty in *Bankers' Trust Co. v. Blodgett,* 260 U.S. 647, 43 S.Ct. 233, 67 L.Ed. 439 (1923). The statute challenged in *Bankers' Trust* imposed a 2% tax on the value of estate property for the five years preceding a decedent's death where it appeared that the property was taxable and no state or local tax had been assessed or paid during the year preceding death.[6] The Court recognized that the sanction for failure to pay taxes is "usually punitive," and the Connecticut provision for "penalizing a delinquency" was no exception. *Id.* at 650–51, 43 S.Ct. at 234–35. But the Court held that "[t]he penalty of the statute was not in punishment of a crime," and hence the ex post facto prohibition was simply not implicated. *Id.* at 652, 43 S.Ct. at 235.

The Court has also warned, however, that the constitutional prohibition against ex post facto legislation may not be avoided by giving civil form to criminal legislation. *See Burgess v. Salmon,* 97 U.S. (7 Otto) 381, 384, 24 L.Ed. 1104 (1878). In *Burgess,* the Court held that where federal legislation made it a criminal offense to distribute tobacco without a proper tax stamp, imposition of an additional tax on tobacco when the distributor had already paid the tax under the prior law would violate the ex post facto clause. The Court reasoned that to impose criminal punishment retroactively, or, alternatively, a "penalty" in the form of the increased tax, where "the one was equally authorized with the other," would violate the ex post facto clause. *Id.*

In *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), the Court considered a challenge to a revenue statute imposing a 50% addition to tax on a deficiency, if any part of the deficiency was found to be due to fraud with intent to evade tax. The taxpayer, who had been acquitted on criminal tax evasion charges, alleged that the revenue statute violated the double jeopardy clause by attempting to punish twice the same conduct. Thus the question, which the Court indicated was "one of statutory construction," was whether the statute imposed a "criminal. sanction." *Id.* at 399, 58 S.Ct. at 633. The Court reasoned that the sanction was "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud," in holding that the sanction was "remedial," not criminal. *Id.* at 401, 58 S.Ct. at 634. Congress' intent to impose a civil sanction was clear—a "distinctly civil procedure" was provided for the collection of the additional 50% tax, and the statute at issue was included along with other "Additions to the Tax," as distinguished from "Penalties." *Id.* at 402, 405, 58 S.Ct. at 634, 637.

The Court's most recent discussion of the distinction between a civil penalty and criminal punishment is contained in *United States v. Halper,* — U.S. —, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Halper,* the Court again considered when a civil penalty might be deemed "punishment" for double jeopardy purposes. The Court distinguished *Mitchell,* noting that it did not address the question raised—"whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." *Id.,* 109 S.Ct. at 1899. The *Halper* Court postulated that "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanc-

---

6. The statute did allow for proportionate reduction in tax liability upon a satisfactory showing that state or local tax had been paid on the property for some portion of the five-year period preceding the decedent's death. 260 U.S. at 648, 43 S.Ct. at 234.

tion, that must be evaluated." *Id.* at 1901 n. 7. The Court held that double jeopardy would be implicated by an additional civil sanction "to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 1902. Though in a particular case the civil penalty authorized may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment, that case is limited to the situation where the civil sanction is "overwhelmingly disproportionate" to the damages caused by the offender. *Id.* The Court ruled that a sanction of $130,000, compared to the government's approximated costs of $16,000, was sufficiently disproportionate to constitute a second punishment and a double jeopardy violation. *Id.* at 1904.

### C

We agree with the Tax Court that the increased tax penalty imposed under former § 6661(a), as amended by § 8002 of OBRA 1986, is a civil sanction; the ex post facto prohibition is not implicated. Under *Bankers' Trust,* 260 U.S. at 652, 43 S.Ct. at 235, retroactive application of a civil tax penalty does not offend the ex post facto clause. *Helvering v. Mitchell* and *United States v. Halper,* although addressing the question in a different context, provide guidance that confirms the civil character of § 6661. *Cf. United States v. D.K.G. Appaloosas, Inc.,* 829 F.2d 532, 540–45 (5th Cir.1987) (following *Mitchell* and rejecting ex post facto challenge to civil forfeiture statute). As in *Mitchell,* Congress' inclusion of § 6661 along with the other "additions to tax" in subchapter A of chapter 68 of the Code, rather than with the "crimes" in chapter 75, evinced an intent to impose a civil sanction under § 6661. Though deterrence was a principal goal of § 6661, the amendment increasing the penalty also

served to increase government revenues and reimburse the government for investigative and prosecutorial costs.[7] *See Halper,* 109 S.Ct. at 1900 n. 6. We cannot say that a 25% penalty is "overwhelmingly disproportionate" to the damages and expenses caused by taxpayers who substantially understate their tax liability. *See id.* at 1902; *see also Bankers' Trust,* 260 U.S. at 651, 43 S.Ct. at 235 (statute's penal effects not "out of relation or proportion" to a decedent's delinquency).

The Karpas' reliance on *Burgess v. Salmon* is misplaced. The Court there concluded that the ex post facto clause prohibited the government from retroactively increasing the tax that had to be paid to avoid a criminal penalty. Here, no such criminal sanction was implicated. The Karpas' conclusion that characterization of § 6661(a)'s addition to tax as a "penalty" is dispositive and requires reversal of the Tax Court is similarly misplaced. Section 6661(a) imposed a civil sanction, raising no ex post facto concerns.

### III

For the first time on appeal, the Karpas argue that retroactive application of the increased tax penalty under § 6661(a) violates their rights to due process and equal protection of the law. We decline to consider this belated argument, following our general rule that new theories ordinarily will not be considered for the first time on appeal. *See, e.g., National Wildlife Fed'n v. Hanson,* 859 F.2d 313, 318 (4th Cir.1988). This general rule is applied by courts of appeal reviewing Tax Court decisions. *See, e.g., Grauvogel v. Commissioner,* 768 F.2d 1087, 1090 (9th Cir.1985). We are unable to say that this is a case justifying departure from that salutary general rule. Neither of the recognized exceptions to its application applies. Proper resolution of the due process and equal protection ques-

7. The Karpas question how retroactive application of an increased penalty can have a deterrent effect. Though emphasizing the statute's deterrent effect would seem, under *Halper,* to be in the Karpas' interest, we note that taxpayers who have taken questionable reporting positions might be persuaded by the increased sanc-

tion to come forward before they are audited. *Cf.* Treas.Reg. § 1.6661–6(c) (1990) (Commissioner will waive penalty for substantial understatement of income if taxpayer shows additional amount of tax or adequately discloses position in amended return filed before contact initiated).

tions is surely not "beyond any doubt," nor is this a case where " 'injustice might otherwise result' " from our failure to rule on those questions. *See Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (quoting *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)). We therefore decline to consider the Karpas' due process and equal protection arguments.

## IV

For the foregoing reasons, the judgment entered by the Tax Court for the Commissioner is affirmed.

AFFIRMED.