In the Matter of the Petition of
the STATE of Delaware for
a Writ of Mandamus.

Supreme Court of Delaware.

Submitted: Dec. 17, 1991.
Decided: Jan. 27, 1992.

Loren C. Meyers (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, for State of Del.

Joseph A. Hurley (argued), Wilmington, for Carl E. Smith.

Before MOORE, WALSH, and HOLLAND, JJ.

WALSH, Justice:

The State of Delaware seeks the issuance of a writ of mandamus to compel the Superior Court to resentence a defendant under certain assessment standards which were not in effect when the offense was committed. The State specifically requests this Court to order the Superior Court to impose a three percent increase in the amount to be paid by the defendant, Carl E. Smith ("Smith"), to the State's Vic-

tim Compensation Fund and a fifteen percent assessment to be paid to the Drug Rehabilitation Fund. The Superior Court refused to apply the provisions of the newly-enacted legislation on *ex post facto* grounds. The State argues that the retroactive application of these surcharges to crimes committed prior to their enactment is not in violation of the *ex post facto* clause because the assessments are mere funding mechanisms, serving a remedial purpose.

We hold that the proposed assessments are penal in nature and inextricably connected to a criminal conviction. Their application is thus restricted by the *ex post facto* clause of the United States Constitution. We affirm the Superior Court's refusal to apply these surcharges retroactively and deny the issuance of the writ of mandamus.

## I

There are two separate legislative enactments which are the subject of this dispute. On May 14, 1990, the Governor signed an act, effective that date, that created the Drug Rehabilitation Treatment and Education Fund. 67 *Del.Laws* Ch. 210 (codified at 16 *Del.C.* secs. 4801A–04A (Supp.1990)). That legislation, *inter alia,* required the courts of this State to impose upon any defendant convicted of specific drug offenses an assessment of fifteen percent of any penalty, fine or forfeiture imposed. On July 20, 1990, the Governor signed into law another act, effective that same day, that increased the Victim Compensation Fund assessment from fifteen percent to eighteen percent of any fines, penalties, and forfeitures imposed by the court in any criminal case. 67 *Del.Laws* Ch. 260 (11 *Del.C.* § 9012).

On January 7, 1991, pursuant to a plea agreement, Smith pled guilty to one count of trafficking in LSD which occurred on October 31, 1989. Smith was subsequently sentenced on March 8, 1991, to a mandatory three years of imprisonment followed by three years probation. The Superior Court also ordered Smith to pay the costs of prosecution, a $50,000 fine which was then suspended, an assessment of eighteen percent of the fine to the Victim Compensation Fund, and an assessment of fifteen percent of the fine for payment to the Drug Rehabilitation Fund.

Smith then moved to reduce his sentence claiming that he was not subject to the Drug Rehabilitation Fund Assessment or the increase in the Victim Compensation Fund assessment because those assessments were enacted into law after he had committed his crime. Smith argued that the retroactive imposition of these assessments upon him would violate the *ex post facto* clause of the Constitution.

The Superior Court agreed with Smith. The court ruled that the assessments were penal in character and thus any increase in the assessments amounted to an increase in punishment in violation of the *ex post facto* clause. The Superior Court ordered that the assessments, as applied to Smith, be calculated according to the statutes in force at the time Smith committed the crime for which he was sentenced. The State seeks review of that ruling through a petition for a writ of mandamus.

## II

■ Preliminarily, we must address Smith's contention that this Court should decline to entertain the State's petition for extraordinary relief. It is clear that only exceptional circumstances amounting to a "judicial usurpation of power" will justify the invocation of the extraordinary writ of mandamus. *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). One who applies to an appellate court for a writ of mandamus must demonstrate to the reviewing court that the entitlement to the writ is both "clear and indisputable." *Id.* at 96, 88 S.Ct. at 274.

At common law, the State had no option to seek review of an adverse result in a criminal case. *State v. Dobies,* Del.Super., 290 A.2d 663 (1972). In Delaware, the State's right to appeal in criminal cases is conferred by statute. 10 *Del.C.* Ch. 99. Under 10 *Del.C.* § 9902, the State can appeal, as a matter of right, from a final

order of the Superior Court that dismisses a charge, vacates a verdict or judgment based on the invalidity or construction of a statute upon which the charge is found, or vacates a verdict or judgment for lack of jurisdiction over the defendant or subject matter. *State v. Bailey*, Del.Supr., 523 A.2d 535 (1987). This case does not fall within any of these categories. The Superior Court order reducing the assessments did not dismiss the charge nor does it vacate or otherwise affect the judgment of conviction. Thus the State's statutory right of appeal does not afford it a means for seeking review of the Superior Court's ruling.

■ An appellate court will exercise its power of review under a writ of mandamus only in unusual circumstances. The reviewing court must be convinced that there is no other adequate means of redress, that clear prejudice will exist without the issuance of the writ, and that the ruling challenged is an important holding which is claimed to be erroneous as a matter of law. *United States v. United States District Court*, 9th Cir., 858 F.2d 534, 537 (1988). This Court has exercised its original jurisdiction under its mandamus power to review a trial court's interpretation of a statute that had a significant effect on the sentence to be imposed on a particular defendant then pending trial. *In Re Petition of State of Delaware*, Del.Supr., 597 A.2d 1 (1991).

The Superior Court in this case interpreted a statute which arguably increased the severity of punishment imposed upon Smith at sentencing. Additionally, both parties concede that this is a case of first impression and that the possible consequences involved for both the State and Smith are substantial. Resolution of this important question may affect numerous criminal defendants and will determine the amounts to be paid into the Victim Compensation Fund and the Drug Rehabilitation Fund. The significance and originality of the issue militates in favor of the exercise of jurisdiction by this Court.

## III

■ The *ex post facto* clauses of the United States Constitution preclude Congress or the States from enacting any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes punishment additional to that then prescribed. *DiStefano v. Watson*, Del.Supr., 566 A.2d 1 (1989). A law violates the *ex post facto* prohibition, when it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Id.* at 5 (citing *Calder v. Bull*, 3 U.S. 386, 390, 1 L.Ed. 648 (1798)). However, both this Court and the United States Supreme Court have recognized that certain laws may be accorded retroactive effect without running afoul of the *ex post facto* doctrine. These include statutes not criminal in nature or those producing changes which are procedural or administrative and not substantive. *See, e.g., Harisiades v. Shaughnessy*, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); *DiStefano v. Watson*, Del. Supr., 566 A.2d 1 (1989).

■ The State argues that the non-punitive nature of the Victim Compensation Fund was recognized by this Court in *Brookens v. State*, Del.Supr., 466 A.2d 1218 (1983) where it was noted that the declared purpose of the statute creating the Fund was to provide compensation for innocent victims of crime. *Brookens*, however, concerned only the question of whether the Victim Compensation Fund assessment was a "fine" for purposes of determining the jurisdictional threshold for appeal. Our ruling that the assessment was not a fine for appeal purposes does not foreclose the question of whether it may be retroactively increased incident to a criminal sentence.

Two recent federal decisions are instructive in determining the relationship between criminal convictions and related statutory penalties. In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the defendant had been found guilty of sixty-five counts of medicare fraud. The government then instituted a "civil proceeding" to collect statutory

penalty payments of $2,000 on each of the sixty-five false claims. Halper challenged the civil penalty on double jeopardy grounds, contending that it amounted to multiple punishments. The Court noted that in determining whether a particular civil penalty constituted punishment, the labels used by the legislature "are not of paramount importance." 490 U.S. at 447, 109 S.Ct. at 1901. Instead, the focus is on "the purposes actually served by the sanction in question." *Id.* at 447 n. 7, 109 S.Ct. at 1901. Merely because the legislature has labeled a surcharge as a "civil penalty" or a "civil assessment" does not mean that it is automatically immune from a double jeopardy analysis. The assessment may nonetheless have a deterrent or retributive purpose if the sanction was "overwhelmingly disproportionate to the damages [the defendant] has caused." *Id.* at 449, 109 S.Ct. at 1902. Thus, the Court held that the disparity between the district court's approximation of government expenses, of $16,000, and Halper's potential liability under the False Claims Act, of more than $130,000, was sufficiently disproportionate that sanctions under the Act would constitute second punishment in violation of double jeopardy. *Id.* 109 S.Ct. at 1903, 1904.

A second federal decision directly addresses the *ex post facto* effect of increased civil penalties. In *Karpa v. Commissioner,* 9th Cir., 909 F.2d 784 (1990), the taxpayers had substantially understated their tax liability and were assessed not the ten percent penalty in effect when they filed their return, but a twenty-five percent penalty which had been subsequently enacted. The taxpayers contended that the retroactive application of the increased penalty would violate the *ex post facto* clause. Using the analysis of *Halper,* the court rejected the taxpayers' argument. The court acknowledged that the increased penalty had a deterrent effect, but the increase "also served to increase government revenues and reimburse the government for investigative and prosecutorial costs." 909 F.2d at 788. The Court noted that given the damages and increased expense caused by the understatement of tax liability, a twenty-five percent penalty was not disproportionate under *Halper.*

The State contends that the analyses advanced in *Halper* and *Karpa* apply to this case. It asserts that the legislature's use of the term "penalty assessment" to describe both the Victim Compensation Fund and the Drug Rehabilitation surcharge assessments is not determinative of whether the charges are punishment. *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901. The State also notes that these assessments, unlike those in *Halper,* do not directly compensate the State for the harm directly caused by Smith. Instead, the drug fund assessment, is directed towards a broad State effort at drug treatment, rehabilitation and education which are related to particular legislative goals. Similarly, the Victim Compensation Fund assessments assists crime victims of all types who have been injured by violent crimes. Therefore, the argument runs, neither assessment is an additional punishment which the *ex post facto* clause is intended to preclude.

While we agree with the basic premise asserted by both *Halper* and *Karpa, i.e.* that nomenclature does not determine purpose, neither holding is dispositive of the issue before us. Both *Halper* and *Karpa* addressed strictly civil laws passed for the remedial purpose of reimbursing the government for fraud (medicare fraud in *Halper* and tax fraud in *Karpa*). In both cases the government could have proceeded civilly on the fraud charges to seek full compensation without pursuing criminal sanctions. Indeed, in *Karpa* there was no related criminal prosecution. In this case, the State's only means for collecting the assessment is to secure a criminal conviction.

The assessments in question may be deemed remedial in nature to the extent that they serve societal goals other than deterrence or punishment of the offender. However, because they are annexed to a criminal conviction and cannot be the subject of a separate civil proceeding, as in *Karpa* and *Halper,* they are subject to an *ex post facto* restriction. It is clear that these surcharges cannot be viewed as civil

penalties as long as they are connected to, and activated only by, a criminal conviction. Thus, they are part of the "law annexed to the crime", *Calder*, 3 U.S. at 390, and limited by the law in effect when the offenses were committed. The retroactive imposition of later adopted statutory increases violates the *ex post facto* clause.

The decision of the Superior Court is legally correct and accordingly the petition for a writ of mandamus is DENIED.