Morrison, J., dissenting: On their joint federal tax return for 2008, Rand and Klugman claimed that they were entitled to three types of refundable credits: the earned income credit, the additional child tax credit, and the recovery rebate credit. To buttress their claims to these credits, Rand and Klugman falsely reported on their tax return: (1) that they lived in the United States; (2) .that their children lived in the United States; (3) that they had earned income of $18,148, including $17,200 in wages supposedly paid to Rand by the Yeshivas Brisk Institute in Israel. Rand and Klugman reported that their total tax liability, before credits, was $144. This amount was attributable to self-employment taxes. The refundable credits they claimed total $7,471, and they sought a refund of $7,327 ($7,471 - $144). The statements on the return were false; Rand and Klugman were not entitled to the refundable credits they claimed. The issue remaining in this case is to determine the amount of their penalty under section 6662. Section 6662 imposes a 20% penalty on underpayments associated with inaccurate tax returns. For returns that are fraudulent, a 75% penalty applies under section 6663. The amount of either penalty is mathematically dependent on the amount of the underpayment. The amount of the underpayment is in turn a function of four variables, including “the amount [of tax] shown as the tax by the taxpayer on his return”. Sec. 6664(a)(1)(A). This variable is referred to here as the “tax shown”. A disagreement about how to calculate this variable divides our Judges in this case. The Court holds that the “tax shown” for the purpose of calculating an underpayment cannot be less than zero. Therefore, the Court holds that the “tax shown” on Rand and Klugman’s return is zero. In my view, the “tax shown” on the return can be less than zero. I would hold that the “tax shown” on Rand and Klugman’s return is $144 (the amount they reported on their return for self-employment tax) minus $7,471 (the refundable credits they claimed), which is -$7,327.[1] Whether the “tax shown” on a return can be negative, i.e., less than zero, in calculating an underpayment is not answered by the plain language of the Internal Revenue Code. Section 1 imposes the federal income tax on individuals. It provides that a “tax” is “imposed” on “taxable income”. The tax imposed by section 1 is supplemented by a “tax” imposed by section 1401(a) on “the self-employment income of every individual”. The Code provides for several types of credits “against the” taxes imposed by section 1 and section 1401, among other taxes. Some of these credits, including the additional child tax credit, the earned income credit, and the recovery rebate credit, are refundable credits. See secs. 24(d), 32(a), 6428(a). Refundable credits must be refunded by the Internal Revenue Service (IRS) to the taxpayer to the extent they exceed the taxpayer’s pre-refundable-credit tax liability. See secs. 6402(a), 6401(b). I disagree with the Court’s holding for three primary reasons. First, it does not give sufficient weight to Congress’s purpose in enacting section 6662. Second, it relies too heavily on section 6211(b)(4), a section of uncertain relevance to the term in dispute in this case — the term “underpayment”. Third, the Court’s holding creates a gap in the penalty regime that Congress could not have intended. I address each shortcoming in turn. When a law is ambiguous, it is appropriate for a court to interpret the law in a manner consistent with Congress’s purpose behind the law. See Thompson v. GMAC, LLC, 566 F.3d 699, 707 (7th Cir. 2009); Yarish v. Commissioner, 139 T.C. 290, 295 (2012). Sections 6662 and 6664 are ambiguous with respect to the meaning of “underpayment” and, specifically, whether “tax shown” can be negative. The Court’s strained attempt to arrive at the meaning of “tax shown” demonstrates as much. See Yarish v. Commissioner, 139 T.C. at 295 (finding a statutory phrase ambiguous where “it is susceptible of at least two different meanings”). Accordingly, it is appropriate to look to the purpose underlying section 6662 to determine the meaning of “underpayment” and “tax shown”. The purpose of the section 6662 penalty is to deter taxpayers from taking questionable tax return positions that they hope that the IRS will not discover. Estate of Kluener v. Commissioner, 154 F.3d 630, 637 (6th Cir. 1998) (section 6662), aff’g in part, rev’g in part T.C. Memo. 1996-519; Caulfield v. Commissioner, 33 F.3d 991, 994 (8th Cir. 1994) (former section 6661), aff’g T.C. Memo. 1993-423; Karpa v. Commissioner, 909 F.2d 784, 786 (4th Cir. 1990) (former section 6661), aff’g T.C. Memo. 1989-535. Credits are reported by taxpayers on income tax returns, just as items of gross income and deductions are reported on income tax returns. See United States v. Gormley, 201 F.3d 290, 293 (4th Cir. 2000).[2] Taxpayers like Rand and Klugman, who make false claims of credits on their tax returns, hope that the IRS will not discover that they are not entitled to the credits. In the case of refundable credits, the claimants hope that the IRS will write them a refund check (as the IRS did for Rand and Klugman). False claims of credits on returns are as difficult for the IRS to detect as falsely reported items of gross income or deductions. Treating a false claim of credits as part of the “tax shown” on the return, and treating a false claim to refundable credits as potentially a report of negative tax, are consistent with the purpose of section 6662. Adopting this interpretation would result in imposing a penalty on Rand and Klugman of $1,494.[3] This is not an onerous penalty for filing the false return, considering the false return was designed to generate an undeserved tax benefit of $7,471. By contrast, the Court holds that the appropriate amount of the penalty is 20% of $144, or $29. That is only about 0.39% (less than one two-hundredth) of the tax benefit sought. The second reason I contest the Court’s holding is that it relies unduly on section 6211(b)(4). The Court uses an elaborate scheme of statutory construction to divine the meaning of “underpayment”. The Court assumes that, because “tax shown” is used in both section 6664 (defining “underpayment”) and section 6211 (defining “deficiency”), the phrase has the same meaning in both sections. Further, because section 6211(b)(4), which applies exclusively to the definition of “deficiency”, contains a negative tax provision, the Court infers that “tax shown”, in the absence of the subsection (b)(4) modification, cannot be negative. On the basis of these two assumptions, the Court holds that “tax shown” for purposes of defining “underpayment” cannot be negative. This reasoning is flawed for four reasons. First, the Court’s holding implicitly (and incorrectly) assumes that there is a sure meaning of “tax shown” (as used in section 6211(a)) without the negative tax provision found in subsection (b)(4). This assumption is incorrect, as is illustrated by the fact that the Judges in this case cannot agree on the meaning of “tax shown” in the absence of subsection (b)(4). Because its meaning is unclear, the Court should not rely on it in defining “tax shown” in the definition of “underpayment”. The Court holds that “tax shown” (in the absence of subsection (b)(4)) means the tax reported on the return, reduced for credits, but not below zero and that subsection (b)(4) only provides the mechanism by which we reduce “tax shown” into negative territory when calculating a deficiency. Judge Gustafson adopts the view that “tax shown” means the tax reported, unreduced for credits, and that subsection (b)(4) provides the mechanism by which we reduce “tax shown” by credits in calculating a deficiency and reduce “tax shown” below zero. Under this view, in the absence of subsection (b)(4), “tax shown” is not reduced by credits at all. These divergent views demonstrate that, while we know the bottom-line result of subsection (b)(4) — that refundable credits can reduce “tax shown” below zero when calculating a deficiency — we do not know how it achieves this result. This suggests that the concept of “tax shown” (as used in section 6211(a), without subsection (b)(4)), is an unreliable indicator of Congress’s intended meaning of underpayment and that the Court should not rely on it. Second, portions of the opinion of the Court suggest that the concepts of deficiency and underpayment are separate, yet the Court draws heavily from section 6211 (defining “deficiency”) in defining “tax shown” (as used in the definition of “underpayment”) and, indirectly, in defining “underpayment”. The Court’s approach is inconsistent with Congress’s intent. Congress separated the meaning of “underpayment” from the meaning of “deficiency” in 1989. The Court acknowledges as much: “[0]ur conclusion breaks the historical link between the definitions of a deficiency and an underpayment; however, it was Congress that made that break.” See op. Ct. p. 391. Yet the Court adopts a definition of “underpayment” that is necessarily, if indirectly, linked to the meaning of “deficiency”. Despite Congress’s attempt to separate the two terms, the Court’s holding requires us to scrutinize the meaning of “deficiency” to determine the meaning of “underpayment”. The consequences of this approach are illustrated by the role that amendments to section 6211(b)(4) have inadvertently played in the Court’s definition of “tax shown” (for purposes of an underpayment). Section 6211(b)(4) has been amended twice since 1989 — in 2000 and in 2008 — to incorporate the child tax credit and the recovery rebate credit.[4] Each of these amendments changed the definition of “deficiency”. Under the Court’s view, both of these amendments also affected the definition of “underpayment” because they indirectly changed the meaning of “tax shown” in the definition of “underpayment”. Further, there is nothing in the Court’s opinion that suggests that future amendments to section 6211(b)(4) will not similarly affect the meaning of “tax shown” and, as a result, “underpayment”. In recognition of the fact that Congress broke the link between deficiency and underpayment in 1989, the better approach would be to ignore section 6211(b)(4) entirely in arriving at the meaning of “tax shown”. A related problem is that the Court’s holding is not supported by the legislative history it cites. See op. Ct. p. 391 (citing H.R. Rept. No. 101-247, at 1394 (1989), 1989 U.S.C.C.A.N. 1906, 2864). The committee report stated that the establishment of a separate definition of “underpayment” in 1989 (separate from the definition of “deficiency”) was not intended to change the definition of “underpayment”. H.R. Rept. No. 101-247, at 1394, 1989 U.S.C.C.A.N. at 2864. But taken literally this would mean that the definition of “underpayment” remained unchanged from its pre-1989 definition. Because its pre-1989 definition included the negative-tax provision of section 6211(b)(4), that would mean that the “tax shown” on the return, which could be negative before 1989, can still be negative now.[5] But this would mean that the “tax shown” on Rand and Klugman’s return should be reduced to -$7,327. This is the opposite of what the Court holds. The Court holds that the “tax shown” on the return in underpayment calculations cannot be negative. And it holds that the “tax shown” on Rand and Klugman’s return is zero. The Court’s holding, whatever its other merits, is not supported by the Ways and Means Committee report. The fourth problem with the Court’s reliance on section 6211(b)(4) in defining “tax shown” (for purposes of an underpayment) is that the approach relies too heavily on principles of statutory construction. Recall that the Court’s reasoning employs not one, but two principles of statutory construction: the principle that the same phrase means the same thing wherever it appears in the statute and the principle that all statutory phrases must be given effect. It has been recognized that principles of statutory construction rest upon the assumption that Congress is all-knowing. See, e.g., Edwards v. United States, 814 F.2d 486, 488 (7th Cir. 1987). Thus, for example, when Congress uses the same phrase in a statute, it is assumed to do so deliberately because it knows the phrase will be construed the same way wherever it appears. This assumption can give rise to inaccurate readings, especially where, as here, two principles of statutory construction are chained together. For example, it may be reasonable to assume that, in using the phrase “tax shown” in sections 6664 and 6211, Congress intended that “tax shown” would carry the same meaning in both sections; however, it seems inherently less reasonable to assume further that Congress intended for section 6211(b)(4) (defining “deficiency”) to be relied upon to define “tax shown” (as used in defining “underpayment”). The Court’s chain of reasoning seems especially suspect in the light of Congress’s express intent to separate the definition of underpayment from the definition of deficiency. See op. Ct. p. 391. Finally, the majority contends that its holding, which occasions a puny $29 penalty for Rand and Klugman’s false claim for $7,471 in tax credits, does not result in a gap in the penalty regime because there are penalties for false or excessive claims for credits found in section 32(k) and section 6676. Section 32(k), enacted in 1997, provides that a false claim to the earned income credit for one tax year results in the denial of the earned income credit for the next two tax years “[if] there was a final determination that the taxpayer’s claim of credit * * * was due to reckless or intentional disregard of rules and regulations”.[6] Many taxpayers who falsely claim the earned income credit for one year will not qualify for the credit for the subsequent two years anyway. Rand and Klugman, for example, claimed earned income credits for 2006, 2007, and 2008, even though, as they have now stipulated, they were not entitled to the earned income credit for any of the three years. For such taxpayers as Rand and Klugman, section 32(k), even if applicable,[7] deprives them of nothing to which they would otherwise be entitled. It is doubtful that Congress intended section 32(k) to be the only penalty potentially applicable to false refund claims related to earned income credits. Section 6676, enacted in 2007, imposes a 20% penalty on overstated claims to various types of credits, including the additional child tax credit and the recovery rebate credit.[8] It is unlikely that Congress thought the section 6676 penalty was a sufficient (or exclusive) penalty for returns that seek refunds based on false claims of tax credits. First, the section 6676 penalty does not apply to claims to the earned income credit.[9] See sec. 6676(a). Second, the percentage of the section 6676 penalty is only 20%; however, the penalty related to fraudulent returns is 75%. Sec. 6663(a). Under the Court’s approach, a claim for a refund, even if fraudulent, is not subject to the 75% fraud penalty. It seems improbable that Congress intended such behavior to be so lightly penalized. Third, the section 6676 penalty applies to “a claim for refund or credit” whether or not made on a return. Thus, the section 6676 penalty covers more taxpayer submissions to the IRS than the section 6662 and 6663 penalties, which are confined to returns. In addition, the Court asserts that Congress’s exemption of the earned income credit from section 6676 shows its intent that the section 6662 penalty does not reach improper refund claims relating to the earned income credit. See op. Ct. p. 395. It says: “And it appears that Congress intended that the two-year bar be in lieu of any other monetary sanctions. For example, the penalty under section 6676 for an erroneous claim for refund specifically excludes a claim for refund relating to an erroneous earned income credit.” See id. I disagree. In enacting section 6676 in 2007, Congress may have understood that false refund claims relating to the earned income credit were already governed by the forfeiture penalty under section 32(k) enacted in 1997, the 20% penalty under section 6662, and the 75% penalty under section 6663 (if fraudulent). It may have thought that the potential applicability of these penalties would be sufficient. Colvin, J., agrees with this dissent. The difference between zero and -$7,327 affects the amount of the underpayment. If the “tax shown” is zero, the underpayment is $144. If the “tax shown” is -$7,327, the underpayment is $7,471. Professor Lawrence Zelenak in his article “Tax or Welfare? The Administration of the Earned Income Tax Credit”, 52 UCLA L. Rev. 1867, 1869 (2005), observes: In common with other taxpayer-favorable provisions of the federal income tax, the EITC [the earned income tax credit] is administered on the basis of self-declared eligibility. As with persons claiming other income tax deductions, exclusions, and credits, the EITC claimant makes the entries on her tax return required to determine the amount of EITC to which she is entitled, and pays less tax or receives a bigger refund as a result. * * * Twenty percent of $7,471 is $1,494. See sec. 6662. In 1997 Congress added the additional child tax credit to the Code, and in 2000 it incorporated the credit in the negative-tax provision of sec. 6211(b)(4). Consolidated Appropriations Act, 2001, Pub. L. No. 106-554, sec. 1(a)(7), 114 Stat. at 2763 (amending sec. 6211(b)(4)); Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 101(a), 111 Stat. at 796 (adding sec. 24). In 2007 Congress added the rebate recovery credit to the Code and incorporated the credit in the negative-tax provision of sec. 6211(b)(4). Economic Stimulus Act of 2008, Pub. L. No. 110-185, sec. 101(b)(1), 122 Stat. at 615 (amending sec. 6211(b)(4)); id. sec. 101(a), 122 Stat. at 613 (amending sec. 6428(a)). Before 1989 former sec. 6653(a)(1) and (b)(1) imposed penalties equal to percentages of the portions of an underpayment due to negligence (5%) or fraud (75%), respectively. Former sec. 6661(a) (repealed 1989) also imposed a penalty equal to 25% of the portion of an underpayment due to a substantial understatement of income tax. An underpayment was not defined by sec. 6661(a). An underpayment for purposes of the 5% negligence penalty and the 75% fraud penalty was generally defined the same as a deficiency for income tax returns. This rule was found in former sec. 6653(c): “the term ‘underpayment’ means * * * a deficiency as defined in [section 6211]”. See Feller v. Commissioner, 135 T.C. 497, 506-507 (2010). In 1988 Congress amended sec. 6211(b)(4) to add the negative-tax provision we summarized above. Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, sec. 1015(r)(2), 102 Stat. at 357 (amending sec. 6211(b)(4)). At the time, of the three types of credits Rand and KLugman claimed, only the earned income credit was in existence and referenced in the negative-tax provision of sec. 6211(b)(4). Thus, sec. 6211(b)(4) provided: For purposes of subsection (a)- — ■ (A) any excess of the sum of the credits allowable under sections * * * 32 and 34 over the tax imposed by subtitle A (determined without regard to such credits), and (B) any excess of the sum of such credits as shown by the taxpayer on his return over the amount shown as the tax by the taxpayer on such return (determined without regard to such credits), shall be taken into account as negative amounts of tax. Because of the cross-reference of former sec. 6653(c) to the definition of “deficiency”, the 1988 amendment modified the definition of “underpayment” for purposes of sec. 6653(a)(1) and (b)(1). One year later, in 1989, Congress revamped the system of civil tax penalties. Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. No. 101-239, sec. 7721(a), (c), 103 Stat. at 2395, 2399. It repealed former sec. 6653; it added sec. 6662 (the accuracy-related penalty), sec. 6663 (the fraud penalty — equal to 75% of the portion of the underpayment attributable to fraud), and sec. 6664 (setting forth definitions of terms used in secs. 6662 and 6663). OBRA sec. 7721(a), (c)(1). The word “underpayment”, used in sec. 6662 (and sec. 6663), is defined by sec. 6664(a). Secs. 6662(a), 6663(a). The 1988 amendment modifying the definition of “deficiency” remained in the Code, but after 1989 it no longer expressly affected the definition of “underpayment”. This is because in 1989 the definition of “underpayment” was detached from the definition of “deficiency”. See Feller v. Commissioner, 135 T.C. at 507-508 (“The definition of an underpayment is no longer tied to the definition of a deficiency under section 6211, as it had been in section 6653(c)”.). -Despite the detachment of the definition of “underpayment” from the definition of “deficiency”, a report of the House Ways and Means Committee asserted that the definition of “underpayment” under the 1989 amendments was “not intended to be substantively different” from previous law. H.R. Rept. No. 101-247, at 1394 (1989), 1989 U.S.C.C.A.N. 1906, 2864. The period of disallowance is 10 years if the claim of credit is due to fraud. Sec. 32(k) is conditioned upon “reckless or intentional disregard of rules and regulations.” Sec. 6662 is not. See sec. 6662(b)(2). The Court seems to take the IRS to task for failing to assert the sec. 6676 penalty against Rand and Klugman. The opinion states: “Such a penalty might have applied here, if respondent [the IRS] had asserted it.” See op. Ct. p; 395. However, the record does not disclose whether the IRS has asserted a sec. 6676 penalty. This is not surprising. The present proceeding is a deficiency proceeding under sec. 6214. In a deficiency proceeding the Tax Court does not háve authority to redetermine a taxpayer’s liability for a sec. 6676 penalty, which the IRS can assess without a notice of deficiency. See sec. 6671(a). It is the earned income credit that makes up the largest portion of the refundable tax credits claimed by Rand and Klugman on their 2008 return. They claimed an earned income credit of $4,824, an additional child tax credit of $1,447, and a recovery rebate credit of $1,200.