FRANKLIN S. MILLER, JR. AND HELEN B. MILLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 2174-91
United States Tax Court
T.C. Memo 1994-249; 1994 Tax Ct. Memo LEXIS 243; 67 T.C.M. (CCH) 3042; May 31, 1994, Filed *243 Decision will be entered in accordance with the parties' stipulations as to amounts. Petitioner husband (M) pled guilty to a charge of income tax evasion, sec. 7201, I.R.C. 1954, and conspiracy, 18 U.S.C. sec. 2 (1982), for 1983. M was sentenced to prison, given probation, and fined for his actions. R determined Federal income tax deficiencies and additions to tax under secs. 6653(b) and 6661, I.R.C. 1954, as well as the increased rate of interest under sec. 6621(c), I.R.C. 1954, for 1983 arising from petitioners' fraudulent interest deductions. Petitioners contend that imposition of these additions to tax and the increased rate of interest are precluded as to M by the Double Jeopardy Clause of the Fifth Amendment to the Constitution. Held: Imposition of additions to tax under secs. 6653(b) and 6661, I.R.C. 1954, and increased rate of interest under sec. 6621(c), I.R.C. 1954, are not precluded by the Double Jeopardy Clause. Franklin S. Miller, Jr., and Helen B. Miller, pro se. For respondent: Sandra M. Jefferson. MEMORANDUM OPINION CHABOT, Judge: Respondent determined deficiencies and additions to tax under sections 6653(b)[1] (fraud) *244 and 6661 (substantial understatement of income tax) against petitioners as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1983
$ 7,221
$ 4,603
[1]
$ 1,803
1984
6,069
3,035
[2]
1,517
Also, respondent determined that the entire deficiencies for 1983 and 1984 are subject to an increased rate of interest under section 6621(c). The parties stipulated as to petitioners' liabilities, apart from the issue for decision. The stipulation follows the notice of deficiency, except for the following two items: (1) For *245 1983 the parties agree that the base for the interest calculations relevant to sections 6621(c) and 6653(b)(2) should be $ 7,221, instead of the $ 7,212 stated in the notice of deficiency. See sec. 6214(a). (2) For 1984 the parties agree that the base for the interest calculations relevant to section 6653(b)(2) should be $ 3,035, instead of the $ 6,069 stated in the notice of deficiency.
The issue for decision is whether the imposition of the additions to tax and increased rate of interest for 1983 against petitioner Franklin S. Miller, Jr. (hereinafter sometimes referred to as Miller), violates the Double Jeopardy Clause of the Fifth Amendment to the Constitution. The instant case has been submitted fully stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. Background
When the petition was filed in the instant case, petitioners, Miller and Helen B. Miller, husband and wife, resided in Pasadena, Maryland. On May 17, 1983, petitioners formed an entity, described as a foreign contractual trust company, under laws of Turks and Caicos Islands, in the British West Indies. On the same day, petitioners executed a series of agreements *246 showing loans from the contractual trust company to petitioners and purporting to obligate petitioners to repay the asserted loans at 18 or 20 percent interest rates. Petitioners made up their own receipts concerning the interest paid and rubber-stamped these receipts with the name of a person identified as Gerald Williams. Petitioners took their weekly paychecks and cashed them at the Maryland National Bank, the bank from which the checks were issued. They then took the cash and placed it in a "cash box" in their home. Once they had accumulated enough money to make an interest payment, petitioners transferred the cash into the contractual loan company "cash box." Petitioners then wrote out a receipt to themselves for this interest payment and stamped it with a rubber stamp with the name of Gerald Williams. Petitioners then retained the interest payment receipt which they had made for themselves. When petitioners needed money to pay for their personal living expenses, they "borrowed" back the cash from the contractual trust company by removing it from the "cash box" and receiving from the contractual trust company a promissory note, indicating the indebtedness. This note was *247 noninterest bearing. No money ever changed hands and no consideration was given for these loans; however, petitioners paid about $ 3,217 to participate in this scheme. Petitioners claimed interest expense deductions on their joint 1983 and 1984 income tax returns for interest payments made to the contractual trust company, in the amounts of $ 25,807.98 and $ 30,879.92, [2] respectively. The contractual trust company did not make any loans to petitioners, and petitioners did not incur or pay any interest to the contractual trust company during 1983 and 1984. On November 22, 1988, a Federal grand jury for the District of Maryland indicted Miller for tax fraud for 1983 and 1984, in violation of section 7201[3] *248 and of 18 U.S.C. sec. 2 (1982). [4]
On January 22, 1989, Miller signed a plea agreement in which he agreed to plead guilty to the 1983 count of the indictment in return for certain sentencing recommendations and an agreement to dismiss the 1984 count. On January 27, 1989, Miller was rearraigned and pled guilty to the 1983 count. The prosecution stated that it did not ask for restitution, and the court specifically did not order restitution. On March 31, 1989, Miller was sentenced to prison for 18 months, of which all but 3 months was suspended, and he was placed on work release for the 3-month period. He was also placed on 3 years' probation and required to pay a fine of $ 5,000 to the United States. The 1984 count of the indictment was dismissed at this sentencing hearing. *249 Discussion
I. Preliminary Matters
Before we proceed to the double jeopardy issue, we consider preliminary disputes about the scope of the parties' agreement as to what remains to be determined. Respondent contends that the only issue before us is whether imposition of the additions to tax under paragraphs (1) and (2) of section 6653(b) would constitute double jeopardy under the Fifth Amendment. Petitioners contend that we should consider also the following: (1) Whether imposition of the addition to tax under section 6661 and the increased rate of interest under section 6621(c) would constitute double jeopardy under the Fifth Amendment. (2) Whether petitioner Helen B. Miller qualifies as an innocent spouse with respect to the agreed deficiencies, additions to tax, or increased rate of interest. (3) Whether, in light of the Sixth and Eighth Amendments to the Constitution, the interest to be imposed on account of the deficiencies is "more than enough compensation for the cost of procedures exercised by the Respondent". (4) Whether respondent is bound by certain statements made by the U. S. attorney during the course of hearings in the criminal case against Miller.
*250 The parties stipulated that "the parties agree that the only issue presented is whether the respondent's imposition of the fraud penalty for the 1983 year violates the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution." Well over 99 percent of the adjustments to income for 1983 is accounted for by disallowance of the claimed interest deduction, the matter that was the basis of the criminal prosecution.[5] Accordingly, it is apparent that almost all of the additions to tax and increased rate of interest are attributable to the matter that was the basis of the criminal prosecution. Although it is likely that any tax lawyer would understand the term "fraud penalty" to apply only to the additions to tax under section 6653(b), we believe that these pro se petitioners lumped all the additions to tax and the increased rate of interest together into the term "fraud penalty". Accordingly, we conclude that it is appropriate under the stipulation for us to consider the applicability of the Double Jeopardy Clause to the section 6661 addition to tax and the section 6621(c) increased rate of interest, as well as to the section 6653(b) additions to tax. See Clapp v. Commissioner, 875 F.2d 1396, 1399 (9th Cir. 1989), *251 affg. an order of this Court. We note that respondent does not suggest that there is any other evidence that might have been stipulated to, or otherwise offered, if respondent also understood that sections 6661 and 6621(c) were before us; nor does respondent suggest that she would not have entered into the stipulation if she had understood "fraud penalty" to be as broad as petitioners intended; nor does respondent suggest that she would be prejudiced in any meaningful way by this interpretation of "fraud penalty" in the instant case. On the other hand, the remaining issues that petitioners seek to raise are plainly beyond any fair interpretation of what the parties stipulated to be "the only issue presented". Petitioners have not shown they were coerced into signing *252 the stipulations. Petitioners point out that, in a conference call about a month before the start of the trial session at which the instant case was submitted, the Court had raised a question as to whether there would be an innocent spouse dispute. Petitioners are correct in that observation, but this merely shows that, when they signed the stipulation, they were aware of the possibility of making an innocent spouse contention. Nevertheless, they stipulated that the fraud penalty double jeopardy question was "the only issue presented". We conclude that justice does not require us to relieve petitioners from the effect of the parties' stipulation in this matter. Rule 91(e); [6]Louisiana Land & Exploration Co. v. Commissioner, 90 T.C. 630, 648 (1988). Thus, we will consider the applicability of the Double Jeopardy Clause to the section 6653(b) and section 6661 additions to tax and *253 to the section 6621(c) increased rate of interest; we will not consider the other issues raised by petitioners on brief. II. Double Jeopardy
A. In General
Petitioners contend that the additions to tax and increased rate of interest determined as to 1983 (collectively, the civil fraud penalty) are intended as punishment for Miller's 1983 tax fraud, that Miller has already been convicted and punished for his 1983 tax fraud, and thus imposition of the civil fraud penalty would be a second punishment for the same acts, which would violate the Double Jeopardy Clause of the Fifth Amendment to the Constitution. Respondent argues that the additions to tax are remedial in nature because they safeguard the revenue and reimburse the United States for its costs in investigating the taxpayer's fraud. Respondent argues that the Double Jeopardy Clause does not apply to the additions to tax and increased interest rate because they are not overwhelmingly disproportionate to the actual damage caused by petitioners' understatement of tax and bear a rational relationship to compensating the Government for its loss due to that underpayment. We agree with respondent as to the section *254 6653(b) additions to tax; we agree with respondent's conclusions as to the section 6621(c) increased rate of interest and the section 6661 addition to tax. The Double Jeopardy Clause of the Fifth Amendment to the Constitution forbids "any person * * * subject for the same offense to be twice put in jeopardy of life or limb". [7]The Supreme Court has identified three distinct abuses protected against by the Double Jeopardy Clause: (1)A second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440 (1989). *255 The parties' arguments focus on whether Miller is being punished twice. However, the traditional double jeopardy analysis is a two-part test. The first question is whether the civil proceedings concern the same conduct as the criminal proceedings. If they do, then the second question is whether the civil damages rise to the level of criminal punishment. If the civil damages do not involve the same conduct, then the second question is never reached. United States v. Mayers, 957 F.2d 858, 860 (11th Cir. 1992), and cases there cited. We apply this analysis first to the additions to tax under section 6653(b), then to the addition to tax under section 6661, and then to the increased interest rate under section 6621(c). B. Section 6653(b)
For 1983, section 6653(b)[8] imposes (1) an addition to tax of 50 percent of the entire underpayment if any part of the underpayment is due to fraud and (2) an addition to tax of 50 percent of the interest on that part of the underpayment that is attributable to fraud. *256 The first question under the two-part test is whether the civil proceedings concern the same conduct as the criminal proceedings. Before the Supreme Court's decision in Grady v. Corbin, 495 U.S. 508 (1990), the test of whether offenses under two statutory provisions are different for double jeopardy purposes was whether "each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932); see United States v. Liller, 999 F.2d 61, 62-63 (2d Cir. 1993). The Blockburger test may be satisfied (i.e., the offenses treated as being different) even if there is a substantial overlap in the proof offered to establish each offense. See Iannelli v. United States, 420 U.S. 770, 785 n. 17 (1975). In Grady v. Corbin, suprathe Supreme Court significantly modified double jeopardy analysis in the context of successive prosecutions. Under Grady v. Corbin, supra at 521, "the Double Jeopardy Clause bars any subsequent prosecution in which the government, *257 to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." (Fn. ref. omitted.) The Supreme Court limited Grady v. Corbin, supra, in United States v. Felix, 503 U.S.    , 112 S.Ct. 1377, 1383-1384 (1992), instructing courts not to read the Grady v. Corbin, supra, language "literally". In 1993, the Supreme Court overruled Grady v. Corbin, supra, in United States v. Dixon, 509 U.S.    , 113 S.Ct. 2849, 2859-2864 (1993), and returned double jeopardy analysis to its pre- Grady v. Corbin, supra, standards. See United States v. Liller, 999 F.2d at 63. The elements of criminal tax evasion under section 7201 are equivalent to the elements of civil tax fraud under section 6653(b) even though the word "fraud" does not appear in section 7201 and "evasion" does not appear in section 6653(b). Amos v. Commissioner, 43 T.C. 50, 55 (1964), *258 affd. 360 F.2d 358 (4th Cir. 1965). There is sufficient identity between the requirements of section 7201 and those of section 6653(b) to warrant one-way application of collateral estoppel as to fraud. Amos v. Commissioner, supra.That is, every element that respondent must show in order to make a person liable for either of the additions to tax under section 6653(b) must also be shown by the prosecution in order to prove a criminal violation of section 7201. Thus, although the amounts of the additions under section 6653(b) require proof of facts which are not required under section 7201, the basic liability for section 6653(b) additions does not require proof of a fact that is not required under section 7201. As a result, under Blockburgersections 6653(b) and 7201 are not different for double jeopardy purposes. We now proceed to the second part of the two-part test. The second question, whether the civil damages rise to the level of criminal punishment, was squarely faced by the Supreme Court in Helvering v. Mitchell, 303 U.S. 391 (1938). The majority in Helvering v. Mitchell, supra, *259 stated that this was a question of statutory construction, id. at 399, stated that the 50-percent addition to tax is "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud", id. at 401 (fn. ref. omitted), and concluded that this addition to tax was not a punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment. See id. at 398. We have recently reexamined this matter, in Ianniello v. Commissioner, 98 T.C. 165 (1992), where we concluded that the answer is the same as it was in 1938 -- the civil additions to tax under paragraphs (1) and (2) of section 6653(b) are not "punishment", for purposes of the Double Jeopardy Clause. Id. at 176-185. To the same effect is McNichols v. Commissioner, 13 F.3d 432 (1st Cir. 1993), affg. T.C. Memo. 1993-61. Thus, under the two-part test discussed, supra, imposition of the section *260 6653(b) additions to tax on Miller for 1983 does not violate the Double Jeopardy Clause. We hold for respondent on this issue. C. Section 6661
Section 6661[9] imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). *261 In applying the two-part test to section 6661, we conclude that the answer to the first question is, "No". That is section 6661 does not concern the same conduct as section 7201. In order to establish a violation of section 7201, the prosecution must establish that the defendant has "willfully" attempted to evade or defeat the tax. The Supreme Court has ruled that "the standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'" Cheek v. United States, 498 U.S. 192, 201 (1991) (quoting United States v. Pomponio, 429 U.S. 10, 12 (1976), and United States v. Bishop, 412 U.S. 346, 360 (1973)). If the taxpayer has a good faith belief that his or her actions are lawful, then the actions are not willful, for section 7201 purposes, even if the actions are not objectively reasonable. Id. at 202. Section 6661 does not require willfulness in order for there to be a liability for the addition to tax. Indeed, the statute makes it plain that even good faith does not excuse the taxpayer from liability unless that good faith is accompanied *262 by "reasonable cause." Sec. 6661(c); see also sec. 6664(c)(1) of current law. See generally the differentiated discussion of "good faith" and "reasonable basis" under section 6659, in Estate of Jung v. Commissioner, 101 T.C. 412, 449-451 (1993). Accordingly, we conclude that conviction under section 7201 requires proof of a fact which is not required under section 6661. Under section 6661, liability is not imposed unless the understatement of income tax exceeds the greater of (1) 10 percent of the correct tax or (2) $ 5,000. Sec. 6661(b)(1)(A). The language of section 7201, on the other hand, does not include a specific requirement that a particular level of understatement, or underpayment, or deficiency must be shown before a taxpayer may be treated as having violated the statute. Courts of Appeals have ruled that convictions under section 7201 may be sustained as "substantial" even where the amount of tax evaded would not have supported imposition of the section 6661 addition to tax. E.g., United States v. Davenport, 824 F.2d 1511, 1516-1517 (7th Cir. 1987); United States v. Cunningham, 723 F.2d 217, 230-231 (2d Cir. 1983); *263 see United States v. Nunan, 236 F.2d 576, 585 (2d Cir. 1956). Accordingly, we conclude that imposition of the section 6661 addition to tax requires proof of a fact which is not required under section 7201. As a result, under Blockburgersections 6661 and 7201 are different for double jeopardy purposes. This answer to the first question makes it unnecessary to reach the second question under the double jeopardy test. Imposition of the section 6661 addition to tax on Miller for 1983 does not violate his rights under the Double Jeopardy Clause. [10]
We hold for respondent on this issue. D. Section 6621(c)
Section 6621(c)[11] provides for an increased rate of interest *264 on a substantial underpayment attributable to a tax motivated transaction, which is defined to include "any sham or fraudulent transaction." *265 In applying the two-part test to section 6621(c), we conclude that the answer to the first question is, "Yes". That is, section 6621(c) does concern the same conduct as section 7201. As we discussed in considering section 6661, section 7201 requires a showing that the taxpayer willfully attempted to evade or defeat the tax. Section 6621(c), like section 6661, does not generally require proof of willfulness. Indeed the increased rate of interest may be imposed on a taxpayer even if the Court were to find that the taxpayer had the requisite profit motive. Cherin v. Commissioner, 89 T.C. 986, 1000-1001 (1987) (cattle management operation lacks economic substance, found to be tax-motivated transaction despite showing that underpayment was involuntary or unintentional); see also Ewing v. Commissioner, 91 T.C. 396, 422-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991) (section 6621(c) increased rate of interest imposed, but section 6653(a) negligence addition not applied because of reasonable reliance on legal advice). Accordingly, we conclude that a conviction under section *266 7201 requires proof of a fact that is not required under section 6621(c). Liability for increased interest under section 6621(c) is not imposed unless the underpayment exceeds $ 1,000 and is attributable to a tax-motivated transaction. Although it may be possible for one to be convicted of a violation of section 7201 even if the amount of tax evaded is less than $ 1,000, we have not found such an instance in the last few decades, and we think it highly unlikely that as a practical matter there is a difference between underpayments of $ 1,000 or more and "any tax" under section 7201 which is likely to lead to a conviction. Accordingly, we conclude that the $ 1,000 minimum underpayment requirement of section 6621(c) does not serve to establish that sections 6621(c) and 7201 are different for double jeopardy purposes. The second element of section 6621(c), that the underpayment be attributable to a tax motivated transaction, also does not require the proof of a fact which is not required for a conviction under section 7201. As a result of the "fraudulent transaction" language of section 6621(c)(3)(A)(v), we have used holdings that a taxpayer committed civil tax fraud under section *267 6653(b) as a basis for holding, without further analysis, that the transaction was a sham or fraudulent. See, e.g., Price v. Commissioner, 88 T.C. 860, 888-889 (1987), affd. per order (10th Cir., Oct. 26, 1990). For the vast majority of cases, it would be difficult to conclude that "fraud" under section 6653(b) is different from "fraudulent transaction" under section 6621(c)(3)(A)(v). We have already determined that sections 6653(b) and 7201 describe the same offense. We conclude that sections 6621(c)(3)(A)(v) and 7201 describe the same offense; the imposition of the section 6621(c) increased rate of interest does not require proof of a fact which is not required under section 7201. As a result, under Blockburger, sections 6621(c) and 7201 are the same for double jeopardy purposes. We now proceed to the second part of the two-part test. Under the Double Jeopardy Clause, if a person has been punished under the criminal law, then that person may not be prosecuted again for the same offense nor be punished again for the same offense. Thus, a second proceeding may be prohibited if the second proceeding is a criminal one, or if the second proceeding *268 entails a civil sanction which "may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." United States v. Halper, 490 U.S. 435, 443 (1989). In United States v. Ward, 448 U.S. 242, 248-249 (1980), the Supreme Court described the appropriate analysis as follows: This Court has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. See, e.g., One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237 (1972); Helvering v. Mitchell, supra, at 399. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. See One Lot Emerald Cut Stones v. United States, supra, at 236-237. Second where Congress has indicated an intention to establish a civil penalty, we have inquired further whether *269 the statutory scheme was so punitive either in purpose or effect as to negate that intention. See Flemming v. Nestor, 363 U.S. 603, 617-621 (1960). In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." Id., at 617. See also One Lot Emerald Cut Stones v. United States, supra, at 237; Rex Trailer Co. v. United States, 350 U.S. 148, 154 (1956).
Because the Ward test focuses on statutory construction, and in particular the Congress' intent and purpose, it may be helpful to briefly review the legislative history of section 6621(c). The provision was enacted as section 6621(d) by section 144 of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 682. It was not in the House-passed bill. It appeared as section 150 in the bill as ordered reported by the Senate Finance Committee, and is described in that Committee's report. S. Prt. 98-169 (Vol. I) at 436-437 (1984). In that form it would have increased by 50 percent the interest rate *270 on both deficiencies and overpayments attributable to tax shelter syndication items where the principal purpose of the syndication was to avoid or evade Federal income tax. The Finance Committee stated as follows: Reasons For Change The committee is concerned by the continued rise in the backlog of cases with respect to pre-1983 years which involve tax shelter issues. The number of tax shelter cases in examination at the Internal Revenue Service was 195,000 at the end of fiscal year 1980, 250,000 at the end of 1981, and 285,000 at the end of 1982. Over the same period, the backlog of pending cases in the Tax Court increased from 34,776 to 53,440. Explanation of Provision Under the bill, the otherwise applicable interest rate for periods after 1983 will be increased by 50 percent with respect to tax-shelter items arising with respect to any year. Thus, under the bill a taxpayer who invests in a transaction motivated by a desire to evade or avoid Federal income taxes will have to pay a higher rate of interest if he is found to have underpaid his tax but will be entitled to larger interest payments from the United States if he overpays his taxes and later obtains a *271 refund.
The Senate provision was modified extensively in conference, as follows: (1) The increase in interest rate is 20 percent, instead of the Senate's 50 percent; (2) the increased rate of interest applies to underpayments only if they exceed $ 1,000 and does not apply to overpayments at all; and (3) instead of applying only in the event of certain syndicated tax shelter situations, the increased rate of interest applies to any of a series of specified categories of disallowances, together with an authorization to add other categories by Treasury regulations. The conferees put this provision in context, and described their view of the purpose of a group of provisions as follows in their statement of managers (H. Rept. 98-861, at 984-985 (1984), 1984-3 C.B. (Vol. 2) 238-239): Conference Agreement The conference agreement contains a modified form of the Senate amendment, which increases the interest rate on tax shelter underpayments to 120 percent of the otherwise applicable rate and modifies the definition of tax shelter in the Senate amendment. The increased interest rate applies to an underpayment of tax attributable to one or more tax *272 motivated transactions, if the amount of the underpayment exceeds $ 1,000. A tax motivated transaction is (1) any valuation overstatement of 150 percent or more, (2) any activity with respect to which a loss or an investment tax credit is disallowed by reason of the at-risk rules, (3) any tax straddle, or (4) any use of any accounting method specified in regulations as potentially resulting in a substantial distortion of income. The conferees anticipate that the following deductions and other claimed tax benefits might be considered by the Secretary to arise from accounting methods that may result in a substantial distortion of income: (1) Deductions disallowed under section 464, relating to farming syndicates; (2) In the case of a cash method taxpayer, interest deductions disallowed under section 461(g), relating to prepaid interest; (3) Interest deductions disallowed because they exceed the effective rate of interest, such as under the rule of 78's; (4) Improper deductions for syndication expenditures; (5) Deductions disallowed under section 267(a)(2), relating to transactions between related taxpayers with different accounting methods; (6) Failure to take into account *273 deferred rental payments in accordance with the principles of section 467, as added by this Act; and (7) Deductions disallowed under the principles of section 461(i), as added by this Act, relating to prepayments of expenses by tax shelters.
In addition, the Secretary is given regulatory authority to specify other types of transactions that will be treated as tax motivated. He shall take into account the ratio of tax benefits to cash invested, the method of promoting this type of transaction, as well as other factors he considers relevant. The provision is effective with respect to interest accruing after December 31, 1984, regardless of the date the return was filed. The conferees note that a number of the provisions of recent legislation have been designed, in whole or in part, to deal with the Tax Court backlog. Examples of these provisions are the increased damages assessable for instituting or maintaining Tax court proceedings primarily for delay or that are frivolous or groundless (sec. 6673), the adjustment of interest rates (sec. 6621), the valuation overstatement and substantial understatement penalties (secs. 6659 and 6661), and the tax straddle rules (secs. 1092 *274 and 1256). Additionally, the conference agreement did not follow the provision of the House bill permitting certified public accountants and enrolled agents to represent a taxpayer in a small tax case because the Tax Court stated that permitting this would jeopardize the integrity of the small tax case process, which is working well. The conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court. The positive response that the Court has made to several recent GAO recommendations is encouraging and the conferees expect the Court to implement swiftly these and other appropriate management initiatives. The conferees also note favorably the steps the Court has begun to take in consolidating similar tax shelter cases and dispensing with lengthy opinions in routine tax protester cases. The Court should take further action in these two areas, as well as to assert, without hesitancy in appropriate instances, the penalties that the Congress has provided.
As we have indicated, supra note 11, by section *275 1535(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2750, the Congress added "(v) any sham or fraudulent transaction" to the specified categories of instances where the increased interest rate applies. The conferees explained the change as follows in their statement of managers, H. Conf. Rept. 99-841 (Vol. II), at II-796 (1986), 1986-3 C.B. (Vol. 4) 1, 796: Conference Agreement The conference agreement does not include the provision of the Senate amendment increasing the rate of interest on tax-motivated transactions. The conference agreement instead makes a technical correction to the present-law provision that increases the rate of interest for tax-motivated transactions. The Tax Court has recently held ( DeMartino v. Comm'r., T.C. Memo 1986-263 (June 30, 1986); Forseth v. Comm'r., T.C. Memo 1985-279 (June 11, 1985)) that sham transactions that would be subject to this special interest rate were they not shams are not subject to this special interest rate because they are shams. The conferees view it as anomalous that a genuine transaction (lacking the proper *276 profit motive) would be subject to a higher interest rate, while a sham transaction, which is significantly more abusive, would escape the higher interest rate simply because it is a sham. Accordingly, the conference agreement, consistent with the legislative intent in originally enacting section 6621(d) in 1984, explicitly adds sham or fraudulent transactions to the list of transactions subject to this higher interest rate. The intent of the conferees is to reverse the holding of these Tax Court cases on this issue. This clarification of present law applies to interest accruing after December 31, 1984, which is the date this higher interest rate took effect. This clarification does not apply, however, to any underpayment with respect to which there was a final court decision (either through exhausting all appeals rights or the lapsing of the time period within which an appeal must be pursued) before the date of enactment of this Act.
Applying the foregoing legislative history to the first prong of the Ward test, we conclude that the Congress intended the increased interest rate to operate as a civil sanction and not as criminal punishment; we do so for the following reasons: *277 [12]
(1) Interest applies to civil tax liabilities and civil additions to tax, and is not a part of what a court can adjudge or present as punishment in a criminal fraud proceeding. (2) Increased interest applies in a large range of circumstances, with "fraudulent transaction" being merely one of the many circumstances. See in this connection Walz v. Tax Commission, 397 U.S. 664, 672-673 (1970). (3) The Congress' focus was on dealing with increasing inventories of cases in this Court, especially as they involve "tax shelter cases" and "routine tax protester cases", and not on providing punishments for prelitigation activities. *278 We next turn to the second prong of the Ward test, whether the statutory scheme was so punitive either in purpose or in effect as to negate the Congress' intention to establish a civil remedial mechanism. "'Only the clearest proof'" that the purpose and effect of the sanction are punitive will suffice to override Congress' manifest preference for a civil sanction. United States v. One Assortment of 89 Firearms, 465 U.S. 354, 365 (1984) (quoting Flemming v. Nestor, 363 U.S. 617 (1960)). The Supreme Court recently reexamined this aspect of the Ward test in United States v. Halper, 490 U.S. 435 (1989). The Supreme Court summarized its prior opinions as follows, 490 U.S. at 448-450: We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as deterrent or retribution. * * * We cast no shadow on these time-honored judgments. What we announce now is a rule for the rare *279 case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. * * * [Fn. ref. omitted.]
The legislative history clearly focuses on tax shelter cases and, to a lesser extent, routine tax protester cases, in the context of the then-increasing inventory of cases in the Tax Court and, to a lesser extent, in the Internal Revenue Service. The Congress chose to deal with the then-increasing inventory by making it more expensive for the losing taxpayer to prolong the litigation while delaying payment of the contested taxes. In this regard, the section 6621(c) enactment in 1984 was similar *280 to the time-sensitive additional additions to tax for negligence enacted in 1981 by section 722(b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 342, and for fraud enacted in 1982, by section 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, 96 Stat. 324, 616. Under all of these provisions, the amount the taxpayer ultimately pays is, for the most part, under the taxpayer's control. A taxpayer may pay the deficiency and interest at any time after the notice of deficiency is mailed and still be entitled to a day in this Court. Sec. 6213(b)(4); Estate of Richter v. Commissioner, 16 B.T.A. 936, 937 (1929). The taxpayer who pays the deficiency and interest and then prevails will be entitled to a refund or credit, sec. 6512(b)(3)(A), as well as interest thereon. Sec. 6611. From the foregoing, we conclude that the primary purpose of the increased rate of interest under section 6621(c) was to counteract the forces that the Congress believed were causing a substantial build-up in the Tax Court's inventory. The objective and the manner of accomplishing it had little if any concept of punishment for fraud. In addition, *281 the imposition of the increased rate of interest has no significant characteristics in common with the situation that so concerned the Supreme Court in United States v. Halper, supra.That is, (1) section 6621(c) is not "a fixed-penalty provision", 490 U.S. at 449; (2) the amount to be paid on account of the increased rate of interest can be controlled by the taxpayer; and (3) the amount relates to the damage done to the tax dispute system and thereby does bear a "rational relationship to the goal of compensating the Government for its loss". Ibid.
We hold for respondent on this issue. Decision will be entered in accordance with the parties' stipulations as to amounts. Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the years in issue; references to section 6621↩ are to that section of the Internal Revenue Codes of 1954 and 1986 as in effect for periods after December 31, 1984.
1. The addition to tax is 50 percent of the interest on $ 7,212.↩
2. The addition to tax is 50 percent of the interest on $ 6,069.↩
2. The parties have stipulated that the 1984 total is $ 30,825.96. However, the stipulated tax return shows that the amounts are $ 19,260 and $ 11,619.96, which total $ 30,879.96.↩
3. SEC. 7201. ATTEMPT TO EVADE OR DEFEAT TAX. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title [i.e., the Internal Revenue Code, title 26] or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $ 100,000 ($ 500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.↩
4. SEC. 2. PRINCIPALS. (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.↩
5. Although the indictment does not specify the basis for the deficiency, the discussion between Miller and the prosecutor at the rearraignment hearing makes it plain that the interest deduction was the source of the deficiency in the criminal case.↩
6. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
7. The Fifth Amendment to the Constitution provides as follows: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation.↩
8. Sec. 6653(b) provides, in pertinent part, as follows: SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. -- (1) In general. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. (2) Additional amount for portion attributable to fraud. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).
The subsequent amendments of this provision by sec. 1015(b)(2)(B) of the Technical and Miscellaneous Revenue Act of 1988, Pub L. 100-647, 102 Stat. 3342, 3569, and by sec. 1503(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2742, do not affect the instant case. As a result of secs. 7721(a) and 7741(a) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2395, 2404, the revised fraud addition to tax now appears in secs. 6663 and 6651(f).↩
9. Sec. 6661 provides, in pertinent part, as follows: SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY. (a) Addition to Tax. -- If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. (b) Definition and Special Rule. -- (1) Substantial understatement. -- (A) In general. -- For purposes of this section, there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of -- (i) 10 percent of the tax required to be shown on the return for the taxable year, or (ii) $ 5,000.
* * * (c) Authority to Waive. -- The Secretary may waive all or any part of the addition to tax provided by this section on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith.
This text takes into account an amendment made by sec. 8002(a) of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951. Sec. 6661 was repealed by sec. 7721(c)(2) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2399. The substance of former sec. 6661↩ now appears as sec. 6662(d).
10. We note that, if we were required to reach the second question under the double jeopardy test, then the answer would be supplied by Karpa v. Commissioner, 909 F.2d 784 (4th Cir. 1990), affg. T.C. Memo. 1989-535↩, and would lead to the same result.
11. Sec. 6621(c) provides, in pertinent part, as follows: SEC. 6621. DETERMINATION OF RATE OF INTEREST. * * * (c) Interest on Substantial Underpayments Attributable to Tax Motivated Transactions. -- (1) In general. -- In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this section. (2) Substantial underpayment attributable to tax motivated transactions. -- For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000. (3) Tax motivated transactions. -- (A) In general. -- For purposes of this subsection, the term "tax motivated transaction" means -- (i) any valuation overstatement (within the meaning of section 6659(c)), (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8), (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and (v) any sham or fraudulent transaction.
The additional interest accrues after Dec. 31, 1984, even though the disputed deficiency is for a year before the enactment of sec. 6621(c). Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), without published opinion 795 F.2d 1005 (2nd Cir. 1986). This text takes into account amendments made by secs. 1511(c)(1) and 1535 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744, 2750. Sec. 6621(c)↩ was repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2399. The repeal applies to tax returns due after Dec. 31, 1989 (sec. 7721(d) of the Act), and so does not affect the instant case.
12. In Helvering v. Mitchell, 303 U.S. 391 (1938), the Supreme Court opinion lists a number of reasons supporting the conclusion that the 50-percent addition to tax was intended by the Congress "as civil incidents of the assessment and collection of the income tax." Id. at 405. One of these reasons focused on the fact that in the Revenue Act of 1928, ch. 852, 45 Stat. 791, the different sanctions, the predecessors of secs. 7201 and 6653(b)(1), appear in different parts of the statute * * *. The sanction of fine and imprisonment * * * introduced into the [1928] Act under the heading "Penalties," is obviously a criminal one. The sanction of 50 percentum addition * * * introduced into the Act under the heading "Additions to the Tax," was clearly intended as a civil one. * * * [Id. at 404-405.]
In enacting the Internal Revenue Code of 1939, the Congress provided as follows: Sec. 6. Arrangement, Classification, and Cross References.--The arrangement and classification of the several provisions of the Internal Revenue Title have been made for the purpose of a more convenient and orderly arrangement of the same, and, therefore, no inference, implication or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion thereof, nor shall any outline, analysis, cross reference, or descriptive matter relating to the contents of said Title be given any legal effect. [Pub. L. 76-1, ch. 1, 53 Stat. (Part 1) 1a.]
To the same effect is sec. 7806(b). Although these provisions have not been thought to impair the analysis and conclusions in Helvering v. Mitchell, supra, as to the status of sec. 6653(b)(1) (see United States v. Halper, 490 U.S. 435, 442 (1989)), it is evident that current law precludes us from using the same approach to analyze the status of sec. 6621(c)↩.