WILLIAM L. PATCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patch v. Commissioner
Docket No. 26489-93.
United States Tax Court
T.C. Memo 1995-449; 1995 Tax Ct. Memo LEXIS 449; 70 T.C.M. (CCH) 758; September 21, 1995, Filed *449 Decision will be entered under Rule 155. William L. Patch, pro se. Stephen M. Friedberg, for respondent. FAY, Judge, ARMEN, Special Trial Judge FAY; ARMEN
MEMORANDUM OPINION FAY, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1990 in the amount of $ 16,060 and an accuracy-related penalty under section 6662(a) in the amount of $ 3,212. After concessions, the issues for decision are: (1) Whether petitioner failed to report income in the amount of $ 32,257.39 reflecting his share *450 of amounts stolen from several banks; (2) whether respondent's deficiency determination is proscribed by a criminal plea agreement between petitioner and the U.S. Attorney for the Middle District of Florida; and (3) whether respondent's deficiency determination constitutes an improper second criminal sanction against petitioner for the same conduct in violation of the Double Jeopardy Clause of the Fifth Amendment to the U. S. Constitution. This matter was submitted to the Court fully stipulated pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Background
Between December 7, 1990, and January 8, 1991, William L. Patch (petitioner) and an accomplice, Michael D. McAfee (McAfee), engaged in a crime spree during which they robbed five Florida banks, namely Peoples Financial Savings and Loan, First National Bank of CentralFlorida, Meritor Savings, First Seminole Bank, and NCNB National Bank of Florida. Petitioner and McAfee divided the spoils of their criminal activity into equal shares. Petitioner's share from the bank robberies carried out in 1990 totaled $ 32,257.39. Petitioner and McAfee were subsequently *451 arrested in the Dominican Republic on January 13, 1991, when they attempted to negotiate certain traveler's checks that had been stolen during one of the previously described bank robberies. Upon their return to the United States, petitioner and McAfee were indicted by a Federal grand jury sitting in the U.S. District Court for the Middle District of Florida for two counts of armed bank robbery, one count of bank robbery, and one count of use of a firearm during the commission of a crime of violence. On March 4, 1991, petitioner entered into a plea agreement with the U.S. Attorney for the Middle District of Florida whereby petitioner agreed to: (1) Enter a voluntary plea of guilty with respect to each of the counts set forth in the grand jury indictment; and (2) make restitution in amounts to be determined to the victim banks. In exchange, the U.S. Attorney agreed that, at the time of sentencing, the Government: (1) Would recommend approval of petitioner's request for a "two (2) level downward adjustment" under the Federal sentencing guidelines, and (2) would not oppose petitioner's request for a sentence at the low end of the applicable sentencing range. The plea agreement further *452 stated in pertinent part: 1. (f) If the Court accepts the plea agreement, the government agrees not to charge defendant with committing any other federal criminal offenses known to the government at the time of the execution of this agreement, arising out of his association with Michael Douglas McAfee. * * * * 16. It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.
Petitioner's guilty plea was subsequently accepted by the court, and petitioner was sentenced to approximately 15 years in prison. Petitioner appears to have paid full restitution to the banks in question in 1991. Although petitioner timely filed a Federal income tax return for 1990, he did not report his share of the proceeds from the bank robberies as income. As previously indicated, respondent determined a deficiency in, and an accuracy-related penalty in respect of, petitioner's 1990 tax liability. Although respondent initially *453 determined that petitioner failed to report $ 42,954 in income from the bank robberies, respondent now concedes that the correct amount of unreported income is $ 32,257.39. Petitioner invoked this Court's jurisdiction by filing a timely petition for redetermination. [2]
Discussion
For purposes of clarity, we begin by summarizing the matters that are not in dispute in this case. Thus, petitioner does not dispute (nor could he) that amounts obtained through a criminal enterprise, such as the cash that petitioner unlawfully acquired by robbing banks, constitute gross income within the meaning of section 61. See Commissioner v. Tellier, 383 U.S. 687, 691 (1966); James v. United States, 366 U.S. 213, 219 (1961); Ianniello v. Commissioner, 98 T.C. 165, 173 (1992). *454 Likewise, in the event that we sustain respondent's authority to determine a deficiency under the circumstances presented, petitioner does not contest respondent's determination that petitioner is liable for the accuracy-related penalty under section 6662(a). Taxability of Proceeds From Bank Robberies
Notwithstanding the foregoing, petitioner argued at an earlier stage of this proceeding that his share of the amounts stolen during the bank robberies carried out in 1990 should not be included in his taxable income for that year on the ground that he made full restitution to the victim banks in 1991. Although petitioner did not pursue this point on brief, we will address the argument for the sake of completeness. Petitioner's view of the effect of his restitution payments closely parallels an argument rejected by this Court in Ianniello v. Commissioner, supra.In that case, the taxpayers were indicted, tried, and convicted of various crimes, including mail fraud, bankruptcy fraud, and tax evasion, stemming from a scheme in which they skimmed profits from several restaurants and bars. In addition to receiving fines and prison terms, the taxpayers *455 were required to forfeit to the Government their respective shares of the skimmed receipts pursuant to 18 U.S.C. sec. 1963(c) (1988). It was under these circumstances that the question arose whether gross income under section 61 includes cash unlawfully acquired by a taxpayer where a forfeiture provision of Federal law vests legal title to the cash in the United States and not the taxpayer. In confirming that the term "gross income" under section 61 includes such amounts, we stated: The U.S. Supreme Court has held that gross income includes all "accessions to wealth, clearly realized and over which the taxpayers have complete dominion." James v. United States, 366 U.S. 213, 219 (1961) (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)). A taxpayer has dominion and control over cash when he has the freedom to use it at will, even though that freedom may be assailable by persons with better title. Rutkin v. United States, 343 U.S. 130, 137 (1952). Thus, a taxpayer who unlawfully acquires cash has possession and receives gross income *456 in the taxable year that he unlawfully acquires the cash, even though he makes restitution in a later year. James v. United States, supra at 219-220.
Ianniello v. Commissioner, supra at 173. In the present case, it is evident that petitioner had dominion and control over, and was free to attempt to use his share of the cash and other items taken during the bank robberies. Indeed, it was petitioner's attempt to negotiate a stolen traveler's check that led to his arrest for the bank robberies. Consistent with Ianniello v. Commissioner, supra, and the authorities cited therein, we hold that petitioner received gross income in the amount of $ 32,257.39 in 1990 and that said amount should have been reported on petitioner's 1990 tax return, despite petitioner's payment of restitution to the victim banks in 1991. The deductibility of restitution paid by petitioner in 1991 is an issue that we need not, and may not, decide because that taxable year is not before us in the present proceeding. Plea Agreement
Petitioner next contends that respondent is precluded from determining *457 a deficiency in his income tax for 1990 by virtue of the plea agreement that he entered into with the U.S. Attorney for the Middle District of Florida on March 4, 1991. We disagree. The plea agreement in question memorializes petitioner's agreement to plead guilty to various crimes arising from the bank robberies that he committed in exchange for the U.S. Attorney's agreement to make certain recommendations regarding petitioner's sentences for these crimes. There is no suggestion whatsoever in the plea agreement that the U.S. Attorney agreed that petitioner would not be liable for any deficiency in tax or an accuracy- related penalty with respect to the amounts that petitioner obtained through criminal conduct. Indeed, the plea agreement specifically states that: this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.
Given this clear and unambiguous limitation respecting the scope of the plea agreement, petitioner's *458 argument that the plea agreement somehow serves to proscribe respondent's authority to determine the deficiency and penalty in issue in this case is wholly without merit. [3]
Double Jeopardy
In the alternative, petitioner contends that respondent's deficiency determination in this case violates the Double Jeopardy Clause of the Fifth Amendment to the U. S. Constitution. That clause provides in pertinent part as follows: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb". In Miller v. Commissioner, T.C. Memo. 1994-249, *459 we noted that the traditional double jeopardy analysis consists of a two-part test: (1) Whether the civil proceedings concern the same conduct as the criminal proceedings; and (2) whether the civil damages rise to the level of criminal punishment. See Helvering v. Mitchell, 303 U.S. 391, 399 (1938); United States v. Mayers, 957 F.2d 858, 860 (11th Cir. 1992). Applying these standards to the facts at hand, it is evident that petitioner's reliance on the Double Jeopardy Clause as a means of attacking the notice of deficiency is misplaced. In the first instance, the criminal action brought against petitioner in the District Court concerns distinctly different conduct than that in question in the civil action pending before this Court. In particular, the focus in the criminal action concerned the question of petitioner's guilt or innocence with respect to the charges brought against petitioner in the grand jury indictment; i.e., petitioner's criminal liability for two counts of armed bank robbery, one count of bank robbery, and one count of use of a firearm during the commission of a crime of violence. In contrast, the civil *460 action pending in this Court concerns the wholly separate question of whether petitioner understated his Federal income tax for 1990 by failing to include in income his share of the amounts stolen during the bank robberies. In light of these contrasts, it is self-evident that the conduct underlying the criminal action is separate and distinct from that in question here. It is equally clear that petitioner's civil liability for Federal income tax does not rise to the level of criminal punishment. It is well settled that the Federal income tax "is a tax on net income, not a sanction against wrongdoing." Commissioner v. Tellier, 383 U.S. 687, 691 (1966). Respondent's determination of a tax deficiency is remedial in nature in that it is simply an attempt to recover Federal revenues that would otherwise be lost due to the taxpayer's underpayment. Ianniello v. Commissioner, 98 T.C. at 179-180. Likewise, the accuracy-related penalty under section 6662(a), which imposes a penalty in an amount equal to 20 percent of the portion of the underpayment to which the section applies, is intended to serve as a safeguard for the protection *461 of the revenue and to reimburse the Federal government for the expense incurred in enforcing the law. Helvering v. Mitchell, supra at 401-402; Ianniello v. Commissioner, supra at 180-181; see Miller v. Commissioner, T.C. Memo. 1994-249. Consequently, it follows that the Double Jeopardy Clause does not bar respondent from determining a deficiency and penalty in petitioner's Federal income tax for the taxable year 1990, and we so hold. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner initially filed an imperfect petition followed by a proper amended petition. At the time of the filing of the petition, petitioner resided in Petersburg, Virginia.↩
3. Petitioner contends that he was advised by his attorney, before he executed the plea agreement, that the Internal Revenue Service could not bring criminal or civil proceedings against him at a later date. We note that if such a statement was made to petitioner, it is flatly inconsistent with the terms of the plea agreement. In any event, this is not a matter that falls within the parties' stipulation of facts, and we will not consider it further.↩